J. W. JOCKUSCH AND SELIM RINKER v. J. E. AND S. A. TOWSEY.

1. COLLECTIONS BY BANKERS.—Money collected by a bank in the course of its business for its customers, is held payable on demand, or placed to the customer's account. The bank thereby becomes a simple contract debtor for the amount, less commissions which may be charged.

2. BANKERS—EFFECT AS TO POWERS BY ITS SUSPENSION.—After the suspension of a bank, its general power to collect ceases thereby, as to paper deposited with the bank previous to its suspension.

3. BANKERS — FIDUCIARY RELATIONS — BANKRUPTCY.—In a suit against discharged bankrupts for money collected by them as bankers, after suspension, upon drafts deposited with them before they failed, it was error to charge the jury, that if the defendants received the drafts for collection, and collected the same, this constituted such a fiduciary relation that their subsequent discharge in bankruptcy did not release them from liability.

4. SEE FACTS where it was held error to charge the jury, as matter of law, that a debt was not discharged by bankruptcy proceedings.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

This is an action by appellees against Rinker & Jockusch for the recovery of $2,850 and interest, being part of a sum of money received by appellants upon New York drafts placed with them for collection.

Defendants below pleaded general demurrer, general denial, and specially that they were bankers, and, as such, had received the drafts and sent them for collection to their New York correspondents, who collected the money due upon them and had not paid it over to appellants; that the debt was not a fiduciary one, and that their discharge in bankruptcy barred it.

Verdict and judgment in favor of plaintiffs. Defendants appealed.

The evidence showed that on September 24, 1873, Thomas McGreal placed four New York drafts, amounting to $5,350, with Rinker & Jockusch, bankers, at Galveston, for collection, they at the time giving a receipt describing the drafts, and stating that when collected they should be subject to the call of McGreal at par. Rinker & Jockusch sent the drafts on for collection to Baltzer & Taaks, at New York, with instructions to collect and place proceeds to the credit of appellants. They were collected October 1, 1873, and the money credited to appellants, who were owing Baltzer & Taaks about $20,000. September 24, 1873, when the drafts were handed appellants, they were doing a banking and commission business in Galveston. September 27, 1873, they

suspended, and never resumed business or payment again. On September 27 and 29, McGreal called on appellants and requested them to telegraph and stop payment of the drafts, or to allow him to do so. They objected, assuring him that the drafts were for collection, and he would be protected.

November 7, 1873, appellants paid McGreal $2,500 of the amount collected, for which he executed his receipt, as follows:

GALVESTON, *November* 7, 1873.

"Received of Messrs. Jockusch & Co. twenty-five hundred dollars in United States currency, on account of collections made by their correspondents at New York of drafts on Eugene Kelly & Co., of same city, amounting to fifty-three hundred and fifty dollars; and I hereby agree to accept their promise to pay balance from their settlement with preferred creditors.          (Signed)          THOMAS McGREAL."

Afterwards, November 21 and 22, 1873, McGreal transferred and assigned his interest in balance due him by appellants to Josephine E. Towsey, one of the appellees.

December 23, 1873, appellants filed their petition in voluntary bankruptcy. The claim was proved up against the estate, but was afterwards disallowed by the court, and nothing further was ever paid thereon. Appellants were discharged in bankruptcy.

The charge of the court sufficiently appears in the opinion.

*Labatt & Noble,* for appellants.—A general deposit of money in a bank, or with bankers, or drafts for collection, proceeds to be subject to call of depositor when reported collected, does not create a fiduciary relation on the part of the banker toward the depositor, but the relation subsisting between the parties is that of ordinary creditor and debtor, and the debtor, in such case, is discharged from the debt by his certificate of discharge in bankruptcy, thereafter obtained and properly pleaded and shown. (Duncan *v.* Magette, 25 Tex., 248; Planters' Bank *v.* Union Bank, 16 Wall., 501; Cronan *v.*

Cotting, 104 Mass., 245; *in re* Bank of Madison, 9 Nat. Bank. Reg., p. 187; Morse on Banks and Banking, p. 322; Neal *v.* Clark, 5 Otto, 708.)

*F. L. Price* and *Willie & Cleaveland,* for appellees.

I. A suspended bank that receives money upon drafts placed with it for collection previous to such suspension, holds such money in a fiduciary capacity. (German American Bank *v.* Third National Bank of Missouri, 2 Tex. Law Jour., p. 150; Whart. on Agency, sec. 743; Angell & Ames on Corp., 3d ed., pp. 226, 227.)

II. A debt created by a bank while acting in a fiduciary capacity, is not discharged by proceedings in bankruptcy, though it may have been proved up in the bankruptcy proceedings. (Flanagan *v.* Pearson, 42 Tex., 1; U. S. Rev. Stat., sec. 5117; Bump's Bank., 9th ed., pp. 728, 730, 731, 732; Treadwell *v.* Holloway, 46 Cal., 547; Heffren *v.* Jayne, 39 Ind., 463; Carlin *v.* Carlin, 8 Bush, 141.)

BONNER, ASSOCIATE JUSTICE. — The collection of checks, bills of exchange, drafts, notes, and accounts, is within the ordinary business of banks, in behalf of their customers. As a general rule, after the collection is made the bank becomes a simple contract debtor for the amount, less any commissions which may be charged. If the party for whom the collection was made was a regular depositor, the sum would be placed to his credit upon his regular deposit account, unless some peculiar usage or special instruction should demand a different course of dealing. If the party has no deposit account, the bank simply owes him the amount on demand. (Morse on Banks and Banking, p. 322; Planters' Bank *v.* Union Bank, 16 Wall., 501; *in re* Bank of Madison, 9 Nat. Bank. Reg., 184; Durcan *v.* Magette, 25 Tex., 248.)

We are of opinion, both on principle and authority, that after a bank has suspended, it thereby ceases to have the general power and authority which it previously had to col-

lect paper which, before its suspension, had been deposited with it for this purpose, so as to make it a general creditor of the depositor, but that this subsequent collection must be held by it as agent in trust for the owner. (German American Bank *v.* Third National Bank of Missouri, 2 Tex. Law Jour., 150.)

How far this principle might apply in this case, where the defendant bank, before its suspension, had parted with its control over the paper, by indorsing it to their correspondents, Baltzer & Taaks, in the city of New York, with instructions to collect and apply proceeds to an indebtedness due to them by the defendants, we feel difficulty in deciding, and particularly in view of the subsequent act of Thomas McGreal, by whom the original deposit was made, in receiving from defendants $2,500 on account of this collection so made and applied, and in agreeing to accept their promise to pay balance from their settlement with preferred creditors, as shown by his written receipt and agreement in evidence. McGreal, at this time, had not assigned the claim to the plaintiffs, and, so far as shown by the record, had full authority to adjust and settle the matter.

The charge of the court assumed, as a question of law, that if the defendants received the drafts for collection, and collected the same, this constituted such a fiduciary relation that their subsequent discharge in bankruptcy did not release them from liability. This charge was excepted to at the time, and is assigned as error.

We think the assignment well taken. As shown from the above authorities, whether the defendants occupied the relation of ordinary debtors or the fiduciary relation of agents or trustees, was a question of law to be deduced from the facts of the case, and was the main issue presented by the pleadings. The facts and circumstances in regard to the receipt of the drafts and their subsequent collection, the suspension of the defendants as bankers and their subsequent transaction and agreement with McGreal, were questions necessary to be

determined by the jury, under appropriate instructions, in order that the law arising thereupon should be applied. For the error in not submitting them to the jury, the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.