## ARMOUR v. GREENE COUNTY STATE BANK.

### (Circuit Court of Appeals, Seventh Circuit. January 21, 1902.)

#### No. 823.

1. PRINCIPAL AND AGENT—BANK CHECKS—FRAUDULENT INDORSEMENT—NOTICE —NEGLIGENCE.

Where a dealer in corn arranged with a bank to cash the checks of his purchasing agent, such checks to be sent to the dealer from time to time with drafts for the amount thereof, and such agent drew and had cashed at such bank checks purporting to but in fact not representing any purchase of corn, and indorsed by himself, and bearing the fictitious indorsement of the pretended payee, if the indorsement by such agent was irregular it was the duty of such dealer, on the first of such checks being sent to him by the bank, to have notified the bank of such fact, and until so notified the bank was not negligent in receiving and paying such checks.

2. SAME—DUTY OF PRINCIPAL.

Where a dealer in corn arranged with a bank to cash the checks of his agent given for the purchase of corn, and each check bore a memorandum of the amount purchased, the truthfulness of the memoranda could at any time have been tested by such dealer by inspecting the corn in the cribs, but it was no part of the duty of the bank, and it could not be held responsible if some of the checks so drawn and cashed by it did not represent actual purchases.

3. BANKS—DEPOSITOR—RELATIONSHIP—WHEN EXISTING.

Where a dealer in corn made an arrangement with a bank to cash the checks of his agent given for the purchase of corn, the bank to be repaid the amount so advanced from time to time on drafts on the dealer, and at the time of making such arrangement he deposited a small sum in the nature of indemnity against its advancements, such deposit did not create the relationship of banker and depositor between them.

4. FRAUD OF AGENT—LOSS TO INNOCENT PARTIES.

Where a dealer in corn arranges with a bank to cash the checks of his agent given for the purchase of corn, and such agent issues checks purporting to but in fact not representing such purchase, and the bank in good faith cashes such checks, and there is no negligence on the part of such banker, the loss must fall on the dealer, who, by his selection of such agent, made the loss possible.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

A. F. Reichmann, for plaintiff in error.

Edward O. Brown, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and HUMPHREY, District Judge.

GROSSCUP, Circuit Judge. A jury having been waived, this case was tried, in the Circuit Court, by the court. It was brought by the defendant-in-error against the plaintiff-in-error to recover $2,764.11, with interest, the sum total of certain checks drawn by A. C. Morlan, agent of Armour & Co., upon the defendant-in-error,

payable ostensibly to certain farmers in the vicinity of Farlin, Iowa, and purporting to bear their endorsements on the back. The endorsements were, however, forgeries. The checks themselves were false, for, though on their face appearing to have been given to known farmers in payment of corn, were never in fact drawn or delivered for that purpose. They were dishonestly made by Morlan in pursuance of a purpose to defraud the bank, or Armour & Co.

It seems to have been the practice of Armour & Co. to place purchasing agents in the corn producing districts, who, buying corn from farmers, paid for the same by drawing checks upon some local bank. By a corresponding arrangement made with the bank, such checks, when presented, were paid; and at intervals, when a number had accumulated, the bank was reimbursed by a draft upon Armour & Co. for their totals. It was under such an arrangement that Morlan was operating as Armour & Co.'s agent at Farlin, and that the defendant-in-error was cashing his checks.

At the beginning of the season, about October, 1898, Armour & Co. deposited four hundred and fifty dollars with the bank in the nature of indemnity against the bank's advancements upon the checks. From that time until May, 1899, various checks of Morlan were presented and paid, and transmitted at intervals, together with drafts for the respective aggregates. No loss or fraud was discovered until April, 1899, when an inspection of the cribs by an agent of Armour & Co. showed that they contained less corn than the memoranda on the checks called for. It was then found, that during the period covered, Morlan had interspersed with the genuine checks these spurious checks, and had thereby drawn out of the bank, and, through the bank, from Armour & Co. $2,764.11 more than he had actually paid on account of corn purchases.

Plaintiff-in-error contends that the bank was guilty of negligence in the payment of the checks in controversy upon the forged endorsements. And, also, irrespective of this, urges that the legal relationship between the bank and Armour & Co. was that of banker and depositor; arguing therefrom that, as a matter of law, the loss arising from the payment of these checks must fall upon the bank.

Upon the question of negligence the Circuit Court found, as a fact, that the negligence of Armour & Co., in their failure to examine the checks forwarded to them by the bank, materially contributed to the loss sued for.

We find in the record no evidence sufficient to overthrow the Court's finding of fact in this respect. A large proportion of the checks in question bore the endorsement of Morlan himself. If this was irregular, the bank should have been notified by Armour & Co. as soon as the practice began. In the absence of such notice, Morlan's endorsement was in effect a certificate by the drawer of the genuineness of the endorsement of the payee. The bank, so long as it acted in good faith, could not be expected to look beyond such a certificate.

Nor were Armour & Co., in another respect, without fault. The checks each bore a memoranda of the amount of purchase. The

period over which they ran was from October to April. The truthfulness of the memoranda could have been tested at any time by an inspection of the corn in the cribs. Such inspection was within the power of Armour & Co., but not within the duty undertaken by the bank. A failure to make it by the former, at apt times, lies at the bottom of this loss; and its consequence ought not to be visited upon the bank.

Of course, if the relationship between the parties was that of banker and depositor, these facts relating to negligence are largely immaterial. But, in our opinion, such legal relationship is not applicable to the transactions under consideration. Clearly, a deposit for safe keeping was not intended, except to the extent of making the bank Armour & Co.'s disbursing agent. The transaction more nearly resembles the drawing of inland bills of exchange; in which case, it is well settled, that the drawee cannot recover back money paid to the holder. Horstman v. Henshaw, 11 How. 177, 13 L. Ed. 653.

Neither of these legal relationships, however, seem to exactly fit the transactions. Armour & Co. were large purchasers of corn in this and in other districts. Though their transactions could have been carried forward through their purchasing agent alone, by entrusting him with the custody of the funds, they chose, out of considerations largely of bookkeeping, to have an independent disbursing agency. The disbursing agent was the bank. Its duty, in effect, was to pay for such corn as Morlan should report through his checks. The bank's obligation under such circumstances was that simply of ordinary care and good faith. It had the right, in the absence of facts putting it upon notice, to rely upon Morlan's integrity. It was intrusted with no power to supervise or change his methods of transacting the business in hand, and, as has already been stated, there is no evidence impeaching the bank's good faith, or disclosing facts that ought to have put it upon its guard. The bank was, therefore, guiltless of negligence, and laying aside, for the time, any consideration of Armour & Co.'s negligence, the case is one, where one of two innocent parties, standing in equal relation as to obligation, must suffer through the fraud of a third. By a familiar maxim of the law, the loss in such case must fall upon Armour & Co., who, by their selection of Morlan in the first instance, made the loss possible.

The judgment of the Circuit Court is affirmed.