PEOPLE'S NAT. BANK OF KINGFISHER V. WHEELER *et al.*

No. 2057, Okla. T.   Opinion Filed June 22, 1908.

(96 Pac. 619.)

**BANKS AND BANKING—Payment of Forged Check—Liability as Bailee.** In a case where, without consideration, a bank receives from a money lender a sum to be delivered to one of his customers on a check drawn by such customer, and the bank pays the money on a check received in due course of business, at the time and under the circumstances previously agreed on, the fact that such check is a forgery will not render such bank liable for the amount of the same. In such a case the bank, being a bailee without hire, performing a service for the benefit of the bailor, would not be liable where good faith and ordinary diligence was exercised by it.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by Ezekiel Wheeler against the People's National Bank of Kingfisher. The National Bank of Anadarko was made party defendant. Judgment for plaintiff and judgment over against the Bank of Anadarko, and the People's National Bank brings error. Reversed.

Ezekiel Wheeler, defendant in error, was a money lender residing at Kingfisher, Okla. Christ Weber was a farmer living in that county, who in the latter part of November, 1901, intending to go to Caddo county for the purpose of purchasing land, called on Mr. Wheeler to loan him $200, provided he needed it in making such purchase. Together they called on Mr. Boynton, cashier of the People's Bank, stated the facts to him, and arranged that, if Weber wanted the money, the bank would assist in sending it; that the money could either be sent by writing, or telegram. Nothing further was done in the matter until approximately a week later. Mr. Wheeler, who was at home, received a telephone message on December 6, 1901, from the bank, asking if Christ

Weber's check was good for $176, to which he replied that it was. He was then asked if he could take it up, and he answered back that he could, and on the bank asking when he indicated immediately, and thereafter promptly sent the bank his check for $242, which included the amount of the loan which the bank engaged to transmit to Weber; the overplus being a deposit left in the bank. Further facts material to the matter are that on the 6th day of December, 1901, the People's National Bank received a telegram as follows: "To People's Bank. Will you pay Christ Weber's check one hundred seventy-six dollars. National Bank of Anadarko." In response to this the People's National Bank of Kingfisher, after holding the telephonic communication with Mr. Wheeler above referred to, telegraphed the National Bank of Anadarko: "Yes, will pay Christ Weber's check, amount stated." The check came in due course of business and was paid. Weber, immediately after making arrangements for this loan with Mr. Wheeler, made the trip to purchase the land as detailed. Two weeks thereafter he returned to Kingfisher, met Mr. Wheeler, and, being asked in reference to the check, denied that he had ever signed or given any, and denied that the check which was immediately thereafter shown him at the bank was his check, or that the signature thereto was his signature. The bank took the matter up with the National Bank of Anadarko, and from it ascertained that D. J. Johnson, whose name appeared as indorser of the check, was a gambler at that place, and from the evidence of Mr. Wheeler, who went to Anadarko, it developed that Johnson had received the check from a gambler, and that it had been given in a saloon. The evidence of Weber given in a deposition is practically epitomized in an affidavit signed by him and John Humburg, one of the parties who accompanied him on his trip, which is as follows:

"Territory of Oklahoma, Kingfisher County—ss.: I, John Humburg, being duly sworn on oath, depose and say that on December 5th, 1901, Christ Weber, myself, and August Humburg were all at the city of Anadarko; that at that time we were to-

.gether; that we remained there over night; that we were together all of the time, not having separated from one another at any time; that during that time we did not converse wtih any person whomsoever, concerning our object in going to Anadarko, except with-a real estate agent named Miller, whom we saw a few minutes at his office on the evening of that date, and we saw him again for a minute on the street the next morning. We did not inform him that any arrangements were made by which any one of us was to obtain any money through any Kingfisher bank, nor mention any bank to him. We did not, aside from this man, talk to any person regarding our business, nor did we talk among ourselves about it in the hearing of any other person. Neither Christ Weber, nor any one of us three drew or signed any checks on the People's National Bank while we were at Anadarko nor at any other time during our trip there, nor did any one of us sign Christ Weber's name to any checks there, nor did any of us sign any paper whatever of any character while we were at Anadarko. John Humburg. Subscribed and sworn to before me this 5th day of Feb. 1902. J. M. Price, Notary Public. My commission expires 11/20/05. [Seal.]

"Territory of Oklahoma, Kingfisher County—ss.: I, Christ Weber, being duly sworn on oath, depose and say that I have heard read the foregoing affidavit of John Humburg, and I say on oath that the statements therein contained are true. I further say that I did not sign my name to any check or other paper while in Anadarko, nor at any other time sign any check on the People's National Bank or any other bank while on the trip in the new country, nor issue nor cash any check with my name on it at any time. I further say that, though I am a German, I cannot write German with the exception of a few German letters. I cannot sign my name in German. Christ Weber. Subscribed and sworn to before me this 5th day of Feb. 1902. J. M. Price, Notary Public. My commission expires 11/20/05. [Seal.]"

It further appears from the evidence that at the time of this transaction neither Wheeler nor Weber were depositors of the People's National Bank of Kingfisher, although Wheeler became such at the time he deposited the check for $242, a portion of which was the money loaned by him to Weber. Weber had previously borrowed some money from the People's National Bank, all of which had been repaid. However, the bank still had in its possession

some of the canceled paper containing his signature, all of which were in English, while the check cashed was signed in German. A number of witnesses were introduced pro and con as experts on hand-writing; some testifying that the signature was Christ Weber's signature, and others denying it. Suit was brought by Ezekiel Wheeler against the People's National Bank of Kingfisher, who answered, and by cross-petition made the National Bank of Anadarko a party; and prayed judgment against it in the event judgment was taken against itself. The cause was tried to the court without a jury, and judgment was rendered in favor of the plaintiff and against the People's National Bank of Kingfisher, and a judgment over in favor of the People's National Bank of Kingfisher against the National Bank of Anadarko for the amount of the judgment against itself. The National Bank of Anadarko was originally sued by plaintiff jointly, but it filed a demurrer to the petition, which was sustained, and no summons or process and no appearance was ever made by it to the cross-complaint of defendant, the People's National Bank of Kingfisher. However, the judgment against it depends upon the judgment against the Kingfisher National Bank, and, unless it is sustained, it will not be necessary to consider the question of the validity of the judgment against the Anadarko National Bank.

Proceedings in error were instituted in the Supreme Court of the territory of Oklahoma by the People's National Bank of Kingfisher, and the case is before this court for consideration by virtue of our succession.

*Roberts & Curran* and *F. L. Boynton,* for plaintiff in error.
*Bradley & Bradley,* for defendant in error Ezekiel Wheeler.
*M. J. Kane,* for defendant in error the National Bank of Anadarko.

DUNN, J. (after stating the facts as above). Plaintiff in error, the People's National Bank of Kingfisher, relies generally upon two propositions to secure a reversal of this judgment. The first is that it is not sustained by the evidence, and it is argued

with much force that Weber was in fact the maker of the check. This court, of course, lacks the advantage which the trial court had to determine from the appearance of the witnesses who appeared personally and testified on the controverted questions of fact, who were most likely stating the truth, but the most important witness, Christ Weber, gave his testimony by deposition, and the same is before us for our consideration as it was before the trial court. We have carefully read the record in the case, and feel frank to say that we are unable to explain the irreconcilable inconsistencies appearing. There is no explanation given in the record to show how this check could have been made as it was, if Christ Weber's evidence be true. There is no testimony upon which it is possible to formulate any hypothesis as to how any one at Anadarko could have learned that he had made an arrangement at the city of Kingfisher to borrow a sum of money there within which would be encompassed a check for $176, nor how any one could have learned that such loan was to have been consummated through a bank in that city, and, if a bank, how it could have become known that the bank was to be the People's National Bank. Yet these things all took place, and Christ Weber testifies that he or any of his companions gave no information to any one at Anadarko on these matters. The question of whether or not Christ Weber signed this check is the only important question of fact in this case. We are convinced that the testimony in the record upon which the court rendered its judgment is so utterly irreconcilable with the admitted facts that the conclusion of the trial court could be properly set aside on the ground that it is unsupported by the evidence, but we do not do this, preferring to consider the question upon the law of the case.

The able brief presented to us by defendant in error we have examined with much interest, but the controlling question in our judgment is overlooked, and principle and authority are urged and cited to support an assumption which is the very legal point in controversy. It is argued on the part of counsel that the relationship existing between the bank and Mr. Wheeler, in reference

to the $176 paid on this check, was that of banker and depositor, debtor and creditor, while in our view taking the admitted facts in the case as true, altogether a different relationship existed—simply that of bailor and bailee, which was entered into on the part of the bank for the sole benefit of the bailor. This is the second proposition. Let us see. Mr. Wheeler was in the business of loaning money. He had a customer by the name of Christ Weber. He desired to loan, and Weber desired to borrow, some sum not in excess of $200. He did not want it immediately, so that Mr. Wheeler could, with his own hand deliver it to him, nor did he want it in Kingfisher. He desired it at some future time and at some distant place. This was the arrangement. Now, Mr. Wheeler could have carried the money to Weber, or he could have selected an agent to carry it to him. He elected to select an agent, and chose the People's National Bank, informing the bank of such arrangement. Wheeler had no money in the bank, and it is not disclosed by the evidence how it happens that the sum which he sent to the bank was $242, instead of the sum borrowed. Probably, however, this was due to the fact that he had a check for this sum, or desired to check this sum from the other bank. At all events, with the fund which he sent to provide for this loan, he sent an overplus of $66. This was deposited in the bank. The $66 constituted him a depositor, and created of the bank his debtor, but the $176 was not sent to the bank for the purpose of being deposited in it, nor the purpose of a loan, nor did the bank receive it as a deposit, nor did it accept it as a loan. It was sent to the bank under the agreement between them, as the agent of Mr. Wheeler to carry this fund to the borrower. It could have done this by one of its agents, taking it and traveling to Anadarko and delivering it. It could have done it by express, telegraph, or by mail. It chose the latter method. What it did was done under no agreement for remuneration or compensation of any character. None was expected to be given, none asked, and none ultimately paid or received. So that, for the purpose of this transaction, the bank was, as above stated, a gratuitous bailee. Mr.

Wheeler testified that he telephoned that he "would send a check up to the Kingfisher National Bank for $242 and he [the cashier of the People's National Bank] could take out the $176 and place the balance to my credit." The relationship existing between such parties is altogether different from that of banker and depositor. In the latter case the rule is laid down by the Supreme Court of the territory of Oklahoma in the case of *Bank of Blackwell v. Dean,* 9 Okla. 626, 60 Pac 226, as follows:

"Unless there are stipulations to the contrary, deposits of money made in a bank become part of its general funds, and create the relation of debtor and creditor between the depositor and the bank."

To the same effect is the rule annunciated by the Supreme Court of Minnesota in the case of *Mary Branch v. Dawson,* 33 Minn. 399, 23 N. W. 552, in the discussion of which Chief Justice Gilfillan says:

"The legal relation of banker and depositor upon a general deposit is, in most respects, that of debtor and creditor. By the deposit the latter parts with, and the former acquires, the title to the specific money deposited, and the one becomes indebted to the other in the amount of the sum deposited."

Now, in the case at bar, certainly it cannot be successfully contended that this $176 became a part of the general fund of the bank, and that the relationship of debtor and creditor were established between the bank and Mr. Wheeler. In our judgment the bank never acquired any title to it. It had but a single duty to perform in reference to it, and that was to deliver it gratis to the customer of Mr. Wheeler. The general rule in such a case is as stated by Mr. Story in his work on Bailments (Section 23) and is cited with approval in the case of *First National Bank of Carlisle v. Graham,* 79 Pa. 106, 21 Am. Rep. 49, wherein Mr. Justice Woodward, in delivering the opinion of the court, says:

"'When the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, and, of course, makes him answerable only for gross neglect. When the bailment is for the sole benefit of the bailee, the law requires

great diligence on the part of the bailee, and makes him responsible for slight neglect. When the bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect.' In *Tompkins v. Saltmarsh*, 14 S. & R. (Pa.) 275, Duncan, J., in delivering the opinion of the court, said: 'Where one undertakes to perform a gratuitous act, from which he is to receive no benefit, and the benefit is to accrue solely to the bailor, the bailee is liable only for gross negligence, *dolo proximus*, a practice equal to a fraud. It is that omission of care which even the most inattentive and thoughtless men take of their own concerns. There is this marked difference in cases where ordinary diligence is required, and where a party is accountable only for gross neglect. Ordinary neglect is the want of that diligence which the generality of mankind use in their own concerns, and that diligence is necessarily required where the contract is reciprocally beneficial. The bailee without reward is not bound to ordinary diligence, is not responsible for that care which every attentive and diligent person takes of his own goods, but only for that care which the most inattentive take.' "

The sole benefit in this case was as between the bank and Mr. Wheeler to accrue to him, and, considering the value and character of the deposit, the most that could be exacted of the bank was good faith and ordinary diligence, although the authority which we have just cited holds such a person to the slightest degree of diligence and makes him liable only for gross neglect.

A case in which the principle involved in this one is discussed and decided is that of *Armour v. Green County State Bank*, 112 Fed. 631, 50 C. C. A. 399, decided by the Circuit Court of Appeals of the Seventh Circuit; the decision being rendered by Grosscup, Circuit Judge. In this case the facts were that Armour & Co. placed an agent at a little town called Farlin, Iowa, for the purpose of purchasing corn to be paid for by checks drawn on the bank. By a corresponding arrangement made with the bank, such checks, when presented, were paid, and at intervals, when a number accumulated, the bank was reimbursed by Armour & Co. by a draft for their totals. Their agent, Morlan, was operating under this arrangement, and the bank was cashing his checks. At

the beginning of the season of 1898 Armour & Co. deposited $450 with the bank in the nature of an indemnity against the bank's advancement upon these checks. From then until May, 1899, various checks of Morlan were presented, and were transmitted at intervals for the amount to Armour & Co. for payment. In April, 1899, an inspection of the cribs at that point developed that they contained less corn than the memorandum on the checks called for. It was then, discovered that the agent had interspersed the genuine checks with spurious checks to a large amount. The spurious checks were paid by the bank on forged indorsements, and Armour & Co. contended that the bank was guilty of negligence by making payment upon such checks. It was urged that the relationship in this suit between the bank and Armour & Co. was that of banker and depositor, just as it is so urged in the case at bar, and that the loss due to this forgery should fall upon the bank. It developed that the loss would have been less had Armour & Co. been more prompt in their inspection, but the court held that, notwithstanding the previous deposit of $450, the relationship of banker and depositor did not exist between these parties, and that the loss should not fall upon such gratuitous bailee, but upon the one for whose benefit the transaction was made. The court says:

"Of course, if the relationship between the parties was that of banker and depositor, these facts relating to negligence are largely immaterial. But in our opinion such legal relationship is not applicable to the transactions under consideration. Clearly a deposit for safe-keeping was not intended, except to the extent of making the bank Armour & Co.'s disbursing agent. The transaction more nearly resembles the drawing of inland bills of exchange, in which case it is well settled that the drawee cannot recover back money paid to the holder. *Hortsman v. Henshaw*, 11 How. 177, 13 L. Ed. 653. Neither of these legal relationships, however, seem to exactly fit the transaction. Armour & Co. were large purchasers of corn in this and in other districts. Though their transactions could have been carried forward through their purchasing agent alone by intrusting him with the custody of the funds, they chose out of considerations largely of bookkeeping

to have an independent disbursing agency. The disbursing agent was the bank. Its duty, in effect, was to pay for such corn as Morlan should report through his checks. The bank's obligation under such circumstances was that simply of ordinary care and good faith. It had the right, in the absence of facts putting it upon notice, to rely upon Morlan's integrity."

So, in the case at bar, the bank's obligation was, at most, simply that of ordinary care and good faith, and it had the right in the absence of facts putting it upon notice to rely upon the regularity of the transaction between Mr. Wheeler and his customer. The presumption of law is against forgery as indeed it is against the commission of all crime, and the bank did not violate its duty toward its principal when it acted upon this presumption. Nor can we say that the fact that there was canceled paper in the bank bearing Weber's signature would make a change in the situation. The arrangement between Mr. Wheeler and Mr. Weber made in the presence of the cashier was to the effect that Weber would send for this money from the place where he was going. Within approximately a week thereafter in keeping with this arrangement, the bank received this check in due course of business. It appeared to be indorsed by D. J. Johnson, and across its back was stamped: "Pay any Bank or Banker or Order, National Bank of Anadarko. Anadarko, Oklahoma." There was nothing in the entire transaction to show negligence on the part of the Kingfisher bank or to create any suspicion or give notice of any irregularity, and as between these parties to one of whom the transaction was for a profit, and the other performing it as a mere gratuity, the first clearly should stand any loss growing out of it.

The judgment of the district court is accordingly reversed.

Williams, C. J., and Hayes and Turner, JJ., concur; Kane, J., disqualified.