## YOUNG et al. v. BUNDY.

(Court of Civil Appeals of Texas. Amarillo. June 7, 1913.)

1. COURTS (§ 121*)—JURISDICTION—AMOUNT IN CONTROVERSY.

Where plaintiff sued to recover for the conversion of a bank deposit amounting to $200, with interest thereon amounting to $11.80, the amount in controversy was sufficient to confer jurisdiction on the district court, since, where a suit is for conversion of money damages, if allowed, must be in the form of interest.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413–426, 428, 450, 452, 458, 459, 466; Dec. Dig. § 121.*]

2. BANKS AND BANKING (§ 148*)—COLLECTIONS—DEPOSITS.

Where plaintiff deposited a deed with a banker to be sent to a purchaser, and the price collected and deposited to plaintiff's credit, such deposit was a general one, for which the bank was liable on paying out the amount on a forged check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

---

3. BANKS AND BANKING (§ 153*)—"SPECIAL DEPOSIT"—"GENERAL DEPOSIT."

A "special deposit" is the placing of something in the charge of a bank of which specific thing restitution must be made. A special deposit is no part of the bank's available assets, nor does it enter into its general funds nor form a part of its disposable capital, but is to be specifically returned. A deposit is general, unless expressly made special or specific. In the absence of an agreement to the contrary, a deposit of funds in a bank is to be treated as a "general deposit."

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 356, 483–501; Dec. Dig. § 153.*

For other definitions, see Words and Phrases, vol. 4, pp. 3061, 3062; vol. 7, pp. 6574, 6575; vol. 8, p. 7802.]

Appeal from District Court, Hemphill County; H. L. Adkins, Special Judge.

Action by I. A. Bundy against D. J. Young and others. Judgment for plaintiff, and defendants appeal. Affirmed.

H. E. Hoover, of Canadian, for appellants. Baker & Sanders and G. O. McCrohan, Jr., all of Canadian, for appellee.

HUFF, C. J. The appellee, I. A. Bundy, brought suit in the district court of Hemphill county, Tex., against the appellants, D. J. Young, Robert Moody, Thomas F. Moody, R. A. Moody, and Jim Moody, who it is alleged were a partnership and owned and operated a private banking institution, known as the Bank of Glazier; that on the 28th day of November, 1910, there was deposited to appellee's credit subject to check, in said bank, the sum of $200 by the Farmers' National Bank of Marshal, Okl.; that at various times after the deposit, and before the 1st of November, 1911, the appellee called at said bank upon B. P. Seeger and L. C. Freeman, officers of said bank, and inquired about said deposit, and each time he was informed that the deposit was not received. On November 1, 1911, appellee made demand on the said bank for the money deposited, but the bank refused to pay the same or honor his check; that subsequent to repeated demands by appellee appellants sold the bank and are enjoying the fruits and profits of the same, and yet still fail and refuse to pay appellee his debt of $200 or any part thereof, and are bound and liable to pay appellee the said sum of $200, together with damages for the use of same at the rate of 6 per cent. per annum, and prays for judgment for said amount and damages.

[1] The appellants plead general denial, and that the $200 was not received as a deposit. Prior to the 28th day of November, 1910, appellee delivered to the bank of Glazier a certain deed to property in Marshal, Okl., to be delivered to the purchaser thereof, upon the payment of $200, with the understanding and agreement that the $200 was to be returned to said bank gratuitously

and without compensation, received said deed, and forwarded the same and collected the said $200 in the due course of business and without compensation, acting in law only as a gratuitous bailee of the said $200; that after receiving the money the bank in good faith paid out such sum on a check signed by I. A. Bundy December 5, 1910, and that according to custom the bank mailed the same out to Bundy by due course of mail; that Bundy was not at the time of receiving the money a regular customer of the bank, and that the bank had used reasonable care and diligence, and was not therefore liable to appellee. Trial was had before the court without a jury, and judgment rendered for appellee against appellants for the sum of $200, with interest thereon as damages from the 1st day of February, 1912, in the sum of $11.80. The civil jurisdiction of the county court of Hemphill county had been transferred to the district court of said county, and hence suit was filed in the district court. Where a suit is for the conversion of money if damages are allowed, it must be in the form of interest. Commercial Bank v. Jones, 18 Tex. 830. This is such a suit in some of its features as presented by the petition and damages in addition to the amount withheld is prayed for in the form of interest. The court therefore upon the face of the pleadings had jurisdiction of the amount in controversy. Schulz v. Tessman, 92 Tex. 488, 49 S. W. 1031. This matter is not presented by either party; but lest we be misunderstood in retaining jurisdiction to dispose of the case we feel it proper to state our grounds for doing so.

[2] The material facts as established by the judgment of the trial court are: The appellee, I. A. Bundy, owned a lot in the town of Marshal, Okl. The Christian Church of that place contracted to purchase the property from Bundy for the sum of $200. At that time appellee was living with E. Y. Ogilby, a director in the bank of Glazier, who had appellee employed as a common laborer on his farm, and whose place was in Beaver county, Okl., near La Kemp, about 45 miles from Glazier. Some time in the summer or fall of 1910, appellee made a deed to the property and left it with the bank of Glazier, with instructions to hold the deed until the money was paid, and instructed the bank when the money came to place it on deposit to his credit. It appears the first deed drawn was defective, which was returned to the bank of Glazier, to have corrected. The bank notified appellee to that effect by writing him at La Kemp, and in response to the notice appellee went into the town of Glazier a few days later and corrected the deed, but in response to a demand for the abstract declined to furnish it. The court found, and there is evidence upon which the finding can be supported, that appellee never received

notice that the deed had been accepted and the money received for the lot by the bank of Glazier, and placed on deposit to appellee's credit in appellants' bank. The money was remitted to the bank of Glazier about November 28, 1910, by a cashier's check by a bank at Marshal, Okl. Two hundred dollars was paid by the Glazier bank on a check for $200, purporting to be signed by appellee, I. A. Bundy, payable to one Z. O. Bain, December 5, 1910. This party could not be found or located. There is no testimony showing where the check was given, but it is the impression of the witnesses that it originated somewhere in Oklahoma, and passed through the First National Bank of Houston, the First National Bank of Amarillo, and the First National Bank of Canadian. This check could not be traced further than the Houston bank for the reason that, in accordance with its custom, it destroyed the records of the transit papers of cash items, such as the item in question. The court below found that the check for $200, payable to Z. O. Bain and purporting to have been signed by I. A. Bundy, was a forgery. There is evidence in the record supporting this finding. The facts show that appellee called upon the bank of Glazier some time in April, 1911, and asked the assistant cashier, Mr. Seeger, if they had heard from the collection. Seeger told him he knew nothing about it, and that he would have to see Mr. Freeman, the cashier, who at that time was out of the bank. He went back in May, at which time Freeman told him he had never heard from it, and he guessed the deal had fallen through. Appellee says he first learned the money had been sent to the bank when he went to Marshal, Okl., nearly a year after the money had been sent to the bank, and after he had paid the taxes on the lots. The bank at that place exhibited to him the returned cashier's check remitting the money and the indorsements thereon, showing its payment, and then gave to appellee a letter showing he had been to see about the matter. In February or March, 1911, E. Y. Ogilby, at whose place appellee was then living, at the request of appellee, called on Freeman, the cashier, for the papers turned over to him by appellee to the property in Marshall. At that time Freeman told the witness the papers were there, and that he would get them and turn them over to the witness before he left town. Again at La Kemp, before Freeman went out of the bank, on a trip up to that place by Freeman, he again told Ogilby the papers were in the bank, and he would get them for him. In January, 1912, Ogilby examined the books, and found the records of the bank in 1910 showing the receipt of the money on the 28th of November, and the books then showed, as they do now, such fact. It appears from the testimony that the money was sent to the bank by cashier's check on November 28, 1910, and entered on the books as a deposit credit in favor of appellee, and was checked out December 5, 1910. At that time Freeman was on a vacation and the cashier's position was filled by a Mr. Harris, who was then assisted by Seeger. Afterwards, some time in July or August, 1911, Freeman's connection was severed with the bank, and Harris soon thereafter succeeded him. Ogilby nor appellee either examined the bank books at either of the times they asked about the papers, or requested that they be permitted to do so. Ogilby states he could have done so for at the time he was a director in the bank. The court finds that there was no notice given appellee of the receipt of the money by the bank, nor that it mailed to appellee the check purporting to have been given by appellee. Harris and Seeger both testified that they duly mailed same out to appellee, but upon cross-examination they show they only testified to the usual course of their business methods, and had no independent recollection of mailing out the statements or the deposit slip, and were not certain which one actually attended to it. The appellee Bundy testifies positively he received no such notice, and did not receive the check on which the money was paid out. We think there are facts warranting the finding of the court to the above effect. Prior to this transaction, appellee had no account with the bank, and this is the only transaction with the bank by appellee. The signature of the appellant was not taken at the bank except on the deed executed by him to the lots. He did not offer to leave his signature with the bank, nor did the bank request him to do so.

[3] Appellants contend that the deposit in the bank was a special deposit, and therefore a bailment, and did not establish the relation of debtor and creditor or banker and customer, and therefore appellants were not liable except for negligence in paying out the money upon the forged check, if it was such. If the deposit was only a special deposit, and did not establish the relation of banker and customer, the care required of appellants in such case was only ordinary care. A special deposit is the placing of something in the charge or custody of the bank of which specific thing restitution must be made. Morse on Banks and Banking (4th Ed.) §§ 183 and 190; Duncan v. Magetee, 25 Tex. 245. A special deposit is no part of the bank's available assets. It does not enter into the general funds of the bank, and form a part of its disposable capital. It is to be kept by itself and specifically returned. Morse on Banks and Banking, § 205. A deposit is general unless expressly made special or specific. "In the absence of evidence to show that it is the bank's duty by agreement express or clearly implied to keep the funds and their investment separate, it must be treated as a general deposit." Id. 186. Where money is received on deposit, it is a well recognized principle of law that the deposit is a debt owing by the bank to

the depositor. Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 153, 33 S. W. 862; Baker v. Kennedy, 53 Tex. 200. It is not contemplated that the identical money shall be returned, but the relation of debtor and creditor arises between the parties. Templeton v. Hutchens, 57 S. W. 831; Hoskins v. Velasco National Bank, 48 Tex. Civ. App. 246, 107 S. W. 598. So it appears when a bank undertakes to collect money and actually collects the same, thereby receiving the money or receiving credit from another bank, the collecting bank becomes liable to the owner for so much money deposited. Zane on Banks and Banking, §§ 133, 176, and 178; Commercial National Bank v. Armstrong, 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363. After the collection, the bank becomes a simple contract debtor for the amount, and, if the party has no deposit account, the bank simply owes to him the amount on demand. Morse on Banks and Banking, § 248. "But, if it chooses, the bank may credit him with it as if it were an ordinary payment on deposit, and thus initiate and establish the relation of banker and depositor between itself and him." Id.; Jockusch v. Towsey, 51 Tex. 129. Appellee testified it was the agreement that, when the deed was delivered and the money paid for the lots, the bank should deposit the sum in the bank to his credit. The undisputed evidence is that, when the cashier's check was received, the bank placed the amount in the bank as a deposit to the credit of appellee, subject to check, in the usual and ordinary course of business. The bank's agreement and the exercise of its choice "initiated and established" the relation of banker and depositor between it and appellee. We do not think because the appellee was a common laborer or because he had not theretofore been a customer, that for that reason the relation of banker and depositor could not be "initiated" or "established." It would be a strange doctrine to say that because a man had never before had a bank deposit that he could not initiate one, and that, when he did so, the laws governing banks should not apply to him. It is urged that the collection of the money was without consideration, and therefore for the accommodation of the appellee, and for that reason a bailment. Banks collect "without charge, trusting to the indirect profits and advantages which may be expected to accrue by reason of the chance of the money being left uncalled for during a few days following its actual receipt and their consequent use of it for that time. * * * These motives of self-interest must always be supposed to influence the bank when it consents to collect without direct compensation, are to be regarded as constituting a sufficient and valuable inducement for the undertaking to collect." Morse on Banks and Banking (4th Ed.) § 215; 3 Am. & Eng. Enc. of Law (2d

Ed.) p. 802. Appellants cite us to the case of People's National Bank v. Wheeler, 21 Okl. 387, 96 Pac. 619, 21 L. R. A. (N. S.) 816, as supporting their contention. That case we think easily distinguishable. There the bank agreed with the money lender and the borrower for their accommodation to transmit a sum of money from Kingfisher to Caddo county, Okl. The money was turned over to the bank, and thereafter the money was drawn out on a forged check sent in the manner agreed upon. We think the facts in that case brought it under the rule of a bailment, and the relation of banker and depositor did not exist. In this case it was a deed the bank agreed to deliver and to collect the purchase money for the land, and, when it did so, to deposit the money so collected to the credit of the appellee. The relation of banker and depositor arose upon placing the money so collected upon deposit to the credit of appellee. We do not think the court in error in holding against appellants' plea of estoppel. The court finds: "I find that the defendant bank failed to prove by a preponderance of the testimony that after said check was paid it at any time mailed same to the plaintiff by depositing it in the post office at Glazier, Tex., in an envelope, with postage prepaid thereon, with its return card thereon, addressed to the plaintiff at La Kemp, Okl., his post office address." There is testimony in the record supporting this finding of the trial court. The appellee also testified in addition to such testimony positively he did not get notice of the collection of the money or the statement of the payment of the check or the check itself; that he never saw the check or heard of it until after he learned the bank had delivered the deed. The facts show he called several times about the trade and sent his employer after the papers, and the delivery of them to him was postponed or excused on various grounds. He was in fact informed the trade had fallen through, and was so led to believe by the cashier, the man who had undertaken to deliver the deed for him and collect the money. We do not think the facts show an estoppel. It is urged that he himself was negligent in failing to examine the books or in having them examined. We do not think his failure to do so was such an act of negligence as to defeat his right to recover the debt due him by the bank. Certainly not when the men who had the matter in charge led him to believe that the deed had not been delivered, and that the trade had fallen through. If that statement was true, there was no reason to examine the books for a deposit. The thing which would create it he was led to believe had not occurred; that is, no money collected to be deposited. We think the evidence sufficient to support the judgment of the court below and his findings of fact.

The judgment is therefore affirmed.