### FIRST NATIONAL BANK OF FARMERSVILLE v. GREENVILLE NATIONAL BANK.

#### No. 3311.

1.  **Certificate of Deposit.**—A certificate of deposit is ordinarily defined to be a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit which the bank or banker promises to pay to the depositor, to bearer, to the order of the depositor, or to some other person or to his order; and its form must determine its negotiability.

2.  **Same.** — To give an instrument the character of *a certificate of deposit*, the deposit on which it is based must be one *of money;* and when this appears to be the case from the face of the paper, the word *payable* becomes certain as to the mode or medium in which payment must be made; for the law implies under such a state of facts a promise to pay money for money deposited, and to pay a sum equal to the deposit.

3.  **Deposit of Money in Bank.** — When money is deposited with a bank, not merely for safe keeping, it becomes the property of the bank, and the relation of debtor and creditor arises between them; but when the deposit is of something else than money, this relation can not arise from the mere fact of deposit as on an implied contract.

4.  **Deposit of Checks.**—A deposit with a bank of checks does not establish the relation of debtor by the bank to the depositor.

5.  **Payable.**—The word payable used in connection with the acknowledgment of a deposit of something else than money can not be held necessarily to be the equivalent of an express promise to pay any sum of money. Without such promise the instrument is not negotiable.

6.  **Payment—To Pay.**—The word *payable* is a descriptive word, meaning "capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable." Webster. And *to pay* means to discharge one's obligation to another. If an obligation be to deliver specific articles or a package of money left on deposit, although the obligation arises from an express promise, this would not, although reduced to writing, constitute a promissory note; nor would a like promise coupled with an acknowledgment of the deposit of such things constitute a certificate *of deposit.*

7.  **Negotiability of Paper.** — In determining whether a. paper is negotiable it alone can be looked to; for it is to that alone which persons dealing with it must and have the right to look.

8.  **Same — Certificate of Deposit — Case in Judgment.**—An instrument was sued on by an indorsee in due course of business, which is as follows: "First National

Bank, Farmersville, Texas, April 2, 1887.—$2180.—Thomas Wilkerson has deposited in this bank twenty-one hundred and eighty and $\frac{00}{100}$ dollars in cks. payable to the order of himself on the return of this certificate properly indorsed, one day after date. [Signed] L. E. BUMPASS, cashier.'' It was conceded that *cks.* meant *checks*. *Held*, that the paper was not negotiable.

APPEAL from Collin. Tried below before Hon. H. O. HEAD. The opinion states the case.

*John Church* and *Garnett & Muse*, for appellant.—1. Certificates of deposit as respects the transfer of them and their negotiability are governed by the same rules which control promissory notes, and which vary according to the form of the instruments.

2. In order to be negotiable, a certificate of deposit must possess the requisite features of certainty in respect to parties and time and mode of payment; and the same causes which deprive bills and notes of negotiability would affect it in like manner.

3. Negotiable paper must be payable in money only.

4. If a written instrument uses some of the conventional terms that would ordinarily confer upon it the character of negotiability, yet if by some clause or stipulation in the body of the instrument those elements which impart to it negotiability are limited and qualified, the negotiable character of the instrument is destroyed.

5. An instrument is not negotiable if it contains a condition.

6. The word "cks." (checks) used in the certificate expresses the medium of payment and destroys its negotiability. Cattle Co. v. Carroll, 63 Texas, 48; Martin v. Shumatte, 62 Texas, 189; Irvine v. Lowry, 14 Pet., 293; 2 Dan. on Neg. Inst., secs. 1702, 1703, 1706; 1 Edw. on Bills, secs. 147–151; 2 Edw. on Bills, sec. 746; Patterson v. Poindexter, 40 Am. Dec., 554; Ford v. Mitchell, 15 Wis., 304; O'Neill v. Bradford, 42 Am. Dec., 574; Hubbard v. Mosely, 11 Gray, 170; Lindsey v. McClelland, 18 Wis., 481; Thompson v. Sloan, 23 Wend., 71; Williams v. Bennett, 2 Camp, 417, 418.

7. The word "cks." (checks) written in the instrument destroys its negotiability, and the instrument as executed was merely a receipt and evidences the deposit of checks by him calling for the sum of $2180; and it will be construed to mean a promise to pay him in such checks or their proceeds. 1 Dan. on Neg. Inst., sec. 149; 2 Dan. on Neg. Inst., sec. 1706; Cook v. Satterlee, 16 Am. Dec., 432; 3 Myer's Fed. Dec., p. 189; Huse v. Hamblin, 29 Iowa, 501; Rindskoff v. Barrett, 11 Iowa, 172; Lindsay v. McClelland, 18 Wis., 481; Ford v. Mitchell, 15 Wis., 304; Charnley v. Dallas, 8 Watts & Serg., 353.

*Mathews & Neyland* and *Craig & Wolfe*, for appellee.—1. A certificate of deposit when expressed in negotiable words is always negotia-

ble; and the certificate sued on is negotiable, because it uses all necessary negotiable words, and is in no sense conditional or qualified by anything upon its face. Dan. Neg. Inst., secs. 1703–1705; Savings Inst. v. Weeden, 81 Am. Dec., 605; Miller v. Howard, 13 How., 218; Pardee v. Fish, 19 Am. Rep., 176; Poorman v. Miller, 2 Am. Rep., 451; Welton v. Adams, 60 Am. Dec., 579; Kilgore v. Buckley, 14 Conn., 363; Leavitt v. Palmer, 51 Am. Dec., 333; Bean v. Briggs, 63 Am. Dec., 464.

2. (1) The instrument shows on its face a sale of checks to appellant for a specified amount payable to the order of the depositor, on the return of the certificate properly indorsed, one day after date thereof, and is negotiable. (2) The word payable as used in said instrument unqualified, means payable in money, and creates an indebtedness and a promise to pay, on the return of the certificate properly indorsed, one day after date. (3) If a mere bailment was intended, words implying such should have been used. Cattle Co. v. Carroll, 63 Texas, 50; Bean v. Briggs, 1 Iowa, 488; How v. Hartness, Hill & Co., 78 Am. Dec., 312; Lindsley v. McClelland, 88 Am. Rep., 788.

STAYTON, CHIEF JUSTICE.—This action was brought by appellee to recover on the following instrument:

"FIRST NATIONAL BANK,
"FARMERSVILLE, TEXAS, April 21, 1887.

"$2180. Thomas Wilkerson has deposited in this bank twenty-one hundred and eighty and $\frac{00}{100}$ dollars in cks., payable to the order of himself, on the return of this certificate properly indorsed, one day after date.                    "L. E. BUMPASS, Cashier."

This instrument was executed by the cashier of the bank, appellant. It is admitted that the abbreviation "cks." means checks, and that the paper came into the hands of appellee under such circumstances as to entitle it to recover if the paper be negotiable. This is the entire case as it is presented to this court.

It is claimed that the instrument sued on is a negotiable certificate of deposit; and if this is true, we are of opinion that plaintiff was entitled to recover; for, notwithstanding some conflict of authority, it seems to us that in accordance with the great weight of authority, as well as reason, such paper when negotiable in form should be considered negotiable in fact and law.

A certificate of deposit is ordinarily defined to be a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit, which the bank or banker promises to pay to the depositor, to the order of the depositor, or to some other person or to his order, and its form must determine its negotiability. For the purposes of this case this definition is sufficiently accurate and comprehensive; and the first

question is, whether the instrument sued on can be deemed, within the meaning of the law, or the understanding of mercantile men, a certificate of deposit.  To give to an instrument the character of a "certificate of deposit," the deposit on which it is based must be one *of money;* and where this appears to be the case, from the face of the paper, the word "payable" becomes certain as to the mode or medium in which payment must be made; for the law implies, under such a state of facts, a promise to pay money for money deposited, and to pay a sum equal to the deposit.

The instrument before us has the usual form of a certificate of deposit in all respects, except that it shows upon its face that "checks," and not money, were deposited.  When money is deposited with a bank, not merely for safe keeping, it becomes the property of the bank, and the relation of creditor and debtor arises between them; but when the deposit is of something else than money, this relation can not arise from the mere fact of deposit as on an implied contract.  The paper itself informs us that the things deposited were checks; but we are not advised by it whether the sum named in the paper is the sum called for on the face of the checks or their estimated value; but were this otherwise, that would be unimportant in determining the true character of the instrument.

If the word "checks" was used in the sense attributed to it by mercantile men and law writers—"an order upon a bank or banking house purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money to a person named therein, to his order or bearer, and payable instantly on demand"—the inference would perhaps be, that the checks deposited were checks on some bank other than that issuing the paper sued upon, and for the purpose of safe keeping or collection; but in neither event would the relation of debtor and creditor arise from such a deposit.  But for the determination of this case we can not indulge in inferences or presumptions other than such as arise as matter of law.

It has frequently been said, that certificates of deposit have most of the characteristics of promissory notes, and this seems to be true; but a paper to be entitled to the force and effect which paper of these classes have, whether negotiable or non-negotiable, must contain a promise "in writing by one person to pay another person therein named, or to his order, or to bearer, a specified sum of money absolutely and at all events."  Dan. on Neg. Inst., 28.  A paper not having these characteristics can not be a certificate of deposit or promissory note.  The promise to pay must be either an express promise or such a promise as must necessarily be implied from words used in the instrument; but this implication will not arise simply from the fact that the paper may evidence the indebtedness of its maker to the person to whom it is given.

In certificates of deposit there is sometimes an express promise to pay, but the promise is most frequently implied from the word "payable" used in connection with the acknowledgment of the deposit or receipt of a named sum of money by or for the benefit of the person to whom or to whose order the payment is to be made. The acknowledgment by a banker of the deposit of money by another, nothing further showing that it was a special deposit, is sufficient to show the relation of debtor and creditor between the banker and depositor or person for whose benefit the deposit is made, and the word "payable" used in such a connection must be understood to be used with reference to that relation, and can mean nothing less than that the maker of the paper intends thereby to be understood to promise to pay the sum acknowledged to have been received. The word "payable" in such a connection can have no other application.

If the acknowledgment of the receipt of the money showed that the deposit was made only for safe keeping—as a special deposit—then the word "payable" used in connection with such acknowledgment would certainly not be construed into an absolute promise to pay money, but would be deemed only an agreement to deliver the special deposit, and the paper could not be held to be either a certificate of deposit or promissory note.

The instrument sued on shows clearly that paper styled "checks" was deposited, and does not show that money was; and it is unimportant whether the sum named in the instrument be the face value of the checks or their estimated value, for the word "payable," used in connection with the acknowledgment of the deposit of something else than money, can not be held necessarily to be the equivalent of any express promise to pay any sum of money. It becomes a promise to pay only when used in connection with words showing an obligation to pay.

Literally, the words "payable to the order of himself on the return of this certificate properly indorsed" are descriptive of the checks received, but the words could never be so considered when they have application to a sum of money deposited generally, and to which they relate. We do not think, however, that these words were used as descriptive of the checks deposited; for the original certificate, made part of the transcript, shows that it was written on a blank form intended for certificates of deposit, and we refer to this matter only to show that the word "payable," when used in such papers, does not always import a promise to pay. The word "payable" is a descriptive word, meaning "capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable" (Webster); and "to pay" means to discharge one's obligation to another. If the obligation be to deliver specific articles or a package of money left on deposit, although the obligation arises from an express promise, this would not, although reduced to writing, constitute a promissory note;

nor would a like promise, coupled with an acknowledgment of the deposit of such things, constitute a certificate of deposit; but if the obligation be to pay a certain sum of money absolutely, the maker of the instrument so obligated to pay ought to be held to have promised to pay when he executes such an instrument as that before us would be if the words "in cks." were not in it.

If a promise to pay something could be implied from the instrument, could a promise to pay a certain sum of money be implied? If money had been delivered to the bank by Wilkerson, in the absence of something showing that the parties did not so intend, the money would have become the property of the bank, and the relation of debtor and creditor would have arisen, and the amount of the debt and credit would thus have been fixed; but the instrument shows that checks, and not money, were deposited. Whether mercantile paper passes to a bank on deposit depends upon the intent of the parties evidenced by their acts; but there is nothing in the record before us, except the instrument sued on, from which the intent of the parties may be ascertained.

If we assume that the checks became the property of the bank, which is the most favorable presumption for appellee, then may or must we imply a promise, if a promise could be implied, to pay the sum named in the paper sued on. Unless we are required by the instrument itself to assume this, no person dealing with the depositor could safely make such assumption. From the words, "Thomas Wilkerson has deposited in this bank twenty-one hundred and eighty and $\frac{00}{100}$ dollars in checks," even if it be conceded that title to the paper passed to the bank, we can not assume that the bank became obligated to pay him that sum in money, as must we did the certificate show that he had deposited that amount of money. The instrument does show that the bank assumed some obligation to Wilkerson; and if it could be held that from it a promise to pay some sum in money might be implied, this would not be sufficient to sustain plaintiff's case; for he must, in order to maintain this action, show not merely that the bank promised to pay something, but that it promised absolutely to pay a certain sum of money to Wilkerson or to his order. That is not shown; hence the instrument is not one which could be made negotiable by any form of words.

In determining whether paper is negotiable, it alone can be looked to; for it is to that alone which persons dealing with it must and have the right to look; and were it shown by extrinsic evidence that the bank bought from Wilkerson checks on another bank for which it agreed to pay him the sum of $2180, and that it executed the instrument sued on as the evidence of that debt, still we would be compelled to deny to the instrument the character of a certificate of deposit as well as negotiability.

It may seem that a bank that would put out such paper ought to pay it, on the ground that the form it gave to it may have misled a purchaser; but such considerations can have no weight in determining the liability of parties, for all persons are presumed to know what is negotiable paper and what not; and there are no rules affecting the business of a country which it is more necessary to rigidly enforce than those which relate to mercantile paper. The paper was not negotiable, and the judgment of the court below will be reversed and judgment will be here rendered for appellant.

It is so ordered.

*Reversed and rendered.*

Delivered March 18, 1892.

JUSTICE GAINES dissenting.