## MEADOR v. RUDOLPH. (No. 1580.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 3, 1919. On Motion for Rehearing, Jan. 14, 1920. Second Motion for Rehearing Denied Feb. 18, 1920.)

1. NOVATION ⬤⟩5 — NEW CONTRACT WITH BANK AS TO PAYMENT OF COMMISSION SUBSTITUTED FOR OLD ONE EXTINGUISHES PURCHASER'S LIABILITY UNDER OLD ONE.

Where purchaser and broker, whose commission purchaser had agreed to pay, entered into a new contract, pursuant to which the amount of the commission was deposited in a bank to broker's credit, to be paid to broker by bank on a certain contingency, the new contract extinguished the old, and substituted the bank as the debtor; broker's cause of action for the commission thereafter being against bank and not purchaser.

2. BANKS AND BANKING ⬤⟩119 — GENERAL DEPOSIT CREATES RELATION OF DEBTOR AND CREDITOR.

The making of a general deposit with a bank creates the relation of debtor and creditor be-

tween the bank and the party in whose name the deposit is made.

**3. NOVATION ⬡➞1—ELEMENTS OF .NOVATION STATED.**

Novation is effected by the substitution of a new obligation, between the same parties, with the intention to extinguish the old one, or by the substitution of a new debtor with the intention to release the old one, or by the substitution of a new creditor with the intention to transfer the rights of the old one to him.

**4. NOVATION ⬡➞7—ACCEPTANCE MAY BE IMPLIED FROM CIRCUMSTANCES AND CONDUCT OF PARTIES.**

It is not essential that assent to the acceptance of the terms of novation be shown by express words, but the same may be implied from the words and the circumstances and the conduct of the parties.

**5. VENUE ⬡➞8 — ACTION FOR CONVERSION PROPERLY BROUGHT IN COUNTY OF DEFENDANT'S RESIDENCE.**

Where purchaser's agreement to pay vendor's broker his commission was extinguished by new agreement whereby commission was deposited in bank to broker's credit, to be paid on certain contingency, if thereafter the bank wrongfully turned over the deposit to the purchaser, broker's cause of action against purchaser, if any, was for wrongful appropriation of such fund by the purchaser, and the venue of such action would be the county of purchaser's residence, instead of county in which land sold was situated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

### On Motion for Rehearing.

**6. BANKS AND BANKING ⬡➞153—DEPOSIT TO BE PAID THIRD PARTY UPON CERTAIN CONTINGENCY NOT A SPECIAL DEPOSIT IN ITS RESTRICTIVE SENSE.**

Deposit in bank to credit of another person, to be delivered to such person by bank upon depositor being successful in pending suit against him, was not a special deposit in its restrictive sense, requiring the thing deposited to be safely kept and the identical thing returned, but was a special deposit in the sense that it was for a specific purpose, making bank liable to third party upon payment to depositor in violation of the contract between the parties with reference to the deposit.

Appeal from District Court, Sherman County; Reese Tatum, Judge.

Action by C. F. Rudolph against S. D. Meador and others. Action dismissed as to defendants not named. From judgment for plaintiff against named defendant, the latter appeals. Reversed and remanded, with instructions.

Davis & Davis, of Gainesville, for appellant.

W. I. Gamewell, of Dalhart, for appellee.

HUFF, C. J. This action, as originally instituted in the district court of Sherman county by Rudolph, was against S. D. Meador and Annie Meador, the widow, and the named children of Mrs. Meador by T. S. Meador, deceased. All parties defendant were dismissed except S. D. Meador. It is substantially alleged: That Rudolph, the plaintiff, resided in Sherman county, Tex., and that the defendants Meador, against whom the suit was prosecuted to judgment, and all the other defendants dismissed resided in Montague county, Tex. In the early part of the year 1902 plaintiff was conducting a real estate business in Sherman county, and was the agent of J. W. Taylor, who then resided in El Paso, Tex., for the sale of seven sections of land in Sherman county. On the 15th day of February, 1902, Taylor, through the plaintiff as agent, entered into a contract in writing with T. S. and S. D. Meador, whereby Taylor sold to said parties seven sections of land at the price of $1.50 per acre, and at the total price of $6,676.50. Plaintiff was the procuring cause of the sale, and that Taylor thereby became indebted to plaintiff for the commissions due in effecting the sale. That the Meadors assumed the commissions due the plaintiff from Taylor, and agreed to pay the same as part of the purchase price of the land. That the written contract stipulated the Meadors would pay J. W. Taylor the total purchase price, and that Taylor should furnish an abstract of title, and upon examination thereof, if the title was shown to be without defect, or if pronounced by expert legal opinion satisfactory, they should remit the sum of $5,659.27 to the Lowden National Bank of El Paso, Tex., for Taylor, and at the same time remit to plaintiff at Stratford, Tex., $968.09. That at the time of signing the contract the defendant paid $100 of the $968.09, leaving a balance owing of $868.09, for which they were liable under the contract, which had not been paid, though demanded. The contract is made an exhibit to the petition. It is further alleged Taylor and plaintiff complied with the contract, and prepared and furnished an abstract of title as it appeared of record on that date, and that it was furnished the defendants, who employed attorneys to examine the same, and who declared it met the requirements of the contract, which was accepted by the defendants; that Taylor executed and delivered to defendants deeds to the land, which they accepted, and paid Taylor $5,659.27 as stipulated in the contract, but failed to pay plaintiff the sum of $868.09, remaining due according to the contract; that pending their default in this regard Taylor's wife, Mrs. Florence Taylor, brought suit against the Meadors, setting up that the land was her separate property; that long litigation resulted from the suit. On final result of the

litigation it was decreed that the Meadors were entitled to all the land except an undivided $^{91723}/_{667650}$ interest awarded to Mrs. Taylor. The defendants are charged with a deliberate, willful breach of the contract on the 10th day of March, 1902, and consequent damages by failing to send the money to plaintiff on that date. Plaintiff after that date frequently demanded payment, but some months after the amount should have been paid, in pursuance to a verbal promise, made by the Meadors, that they would deposit $968.09 in the First National Bank of St. Joe, Tex., to the credit of plaintiff on condition, and not subject to check or withdrawal by him, "and represented to him [plaintiff] that same was in escrow, and was deposited by them to await the judgment and· result of the suit by Mrs. Taylor against them and Taylor for the land above referred to, and that, if said suit should result in their favor, said bank was instructed to, and would, pay said sum to plaintiff, and, if it resulted unfavorably or against them [T. S. and S. D. Meador], the bank was instructed to; and would, return said deposit to them, the Meadors." The bank furnished the plaintiff a deposit slip in the usual form, with the notation thereon "on conditions not subject to check." It is alleged that it was found that the $968.09, after its deposit, was too much by $100, which had been paid to Rudolph when the contract was signed, and at the request of the defendants plaintiff gave an order to the St. Joe bank to pay back to defendants the $100, and to hold thereafter $868.09, which the bank did, and it is alleged that, by reason of the representations of defendants to plaintiff and of said deposit and deposit slip, and plaintiff's confidence in defendants, "plaintiff acquiesced in same, though unwillingly and under protest, and was persuaded by said Meadors, and at their solicitation agreed, that they should refrain, and did refrain, from instituting suit against T. S. and S. D. Meador to recover said amount of money, and was induced by same to agree to the surrender by the Lowden National Bank of El Paso, Tex., of the Taylor title deeds to the Meadors, and has for all this time since said year 1902, and since said 13th day of March of said year, waited in good faith for the disposition of said suit against their title, and for the payment to him of said sum by said bank, in the event the Meadors were successful in said suit." Since ´final disposition of the suit on May 15, 1918, with the result as above stated, and not until then, about the 18th day of September, 1918, plaintiff learned from the bank that in June, 1916, the amount of $768.09 was withdrawn by the defendants; that by reason thereof it is alleged the deposit was not made in good faith, and that it was not subject to the decision of the courts in the suit,

and was not to be paid plaintiff, whatever the decision of the courts, but was always subject to the use and to the order of Meador Bros., for which reason the defendants were estopped from invoking the statute of limitations on the contract of February 15, 1902, which is sought to be enforced against them. It is then alleged Meadors and the bank conspired, and did fraudulently cause, said escrow money to be paid over to them by the bank, fraudulently and wrongfully, and concealed that fact from plaintiff. Judgment is sought for $868.09, with interest, and to foreclose a vendor's lien on the land, which was decreed to the Meador Bros. in the suit referred to, or to foreclose an equitable lien.

The appellant, defendant below, excepted to the petition, for that it appears therefrom that defendant's residence is in Montague county, Tex., and that none of the exceptions to exclusive venue existed in the cause; and, further, it appears that the agreement of February 15, 1902, was abrogated by subsequent agreement, which last agreement was not to be performed in Sherman county. Appellant also pleaded his right to be sued in the county of his residence, Montague county, which pleading was in the usual form, complying with the statutes for such pleas. Subject to the exception as to venue and the plea of privilege to be sued in the county of his residence, the defendant answered by general and special exceptions and by general and special pleas in bar, which will not be noticed at this time. It appears from the record all pleas, that of privilege and others, were submitted at one time, except that the exception to the petition as to the venue of the case, as stated in the answer, was overruled by the court.

T. S. and S. D. Meador entered into a written contract with J. W. Taylor, dated February 15, 1902, Rudolph acting for Taylor in its execution, and signing it as agent for Taylor. It is recited therein that C. F. Rudolph, as agent for Taylor, "has sold and by these presents binds himself and contracts that a good and perfect title shall be given by said owner, J. W. Taylor," to the Meadors, to the seven sections of land described. "It is further agreed and is part of this contract that the title to the said land now existing in the said J. W. Taylor is a clear, unclouded and unincumbered title in all particulars." Rudolph was to prepare an abstract showing the title to be such, "covering all conveyances or ·actions of any kind affecting the title thereto as are shown by the records of Sherman county." The title shown was to be satisfactory to the Meadors "by legal or expert opinion," as showing good and perfect title. When so pronounced, Taylor "shall thereupon execute a warranty deed," conveying "said tracts of land to the said T. S. & S. D. Meador at El Paso, Tex., upon

the delivery of United States money or Ft. Worth or other Texas exchange, at the Lowden National Bank, El Paso, Texas." The price stipulated was $1.50 per acre. The Meadors contracted to pay $1.50 upon the showing of such abstract that the title was "without cloud or defect," a total of $6,676.50, less $49.14 taxes for year 1902 and $22 for expense in surveying. The sum of $5,659.27 was to be remitted by exchange to the Lowden National Bank of El Paso "to take up said deed," "and the sum of $968.60 shall be remitted by them to the said C. T. Rudolph at Stratford, Texas, at the time of remitting the first amount to the bank, less the first payment; $100.00, to be deducted from the said last-named amount." The $100 was paid by Meadors to bind the contract as stipulated therein.

On February 22, 1902, Rudolph inclosed an abstract to the land in a letter to Meador Bros., in which letter he states that Taylor's wife was sick in New Mexico, and that Taylor would not trouble her to sign the deed, but 'that if she lived and it was especially desired by them she would sign the deed later, as she had theretofore signed deeds to other sections when specially requested; that the land was not a homestead or joint property, but "wholly his and paid for by his money and deeded to him alone." He also included a warranty deed to the land for Taylor to sign, accompanying this with a letter from Rudolph to the Lowden National Bank. This deed and letter Rudolph instructed by his letter were to be sent with the exchange to the bank. The letter to the bank by Rudolph bears date February 25th, which advises that the inclosed deed was to be executed by J. W. Taylor, and the inclosed draft for $5,659.27 to be placed in the bank and to be transferred to the account or order of J. W. Taylor upon his executing the deed. "The deed you will then transmit at once either to Meador Bros., St. Joe, Tex., or to me at Stratford, Tex., for record, as the said Meador Bros. may indicate, below on this page, as being their wish." Meador Bros. indorsed on the letter, "Send deed to Meador Bros., St. Joe, Texas." The statement of facts contained the following:

"It is here admitted that Meador Bros., on March 10, 1902, sent to the Lowden National Bank, El Paso, Tex., exchange for $5,659.27, to be paid to J. W. Taylor upon his execution of the deed, and that the entries on the books of said bank show that it received this exchange on March 13, 1902."

At the time of sending the exchange to the bank Meador Bros. did not send the $868.60 to Rudolph. During the interim between the execution of the contract of sale, February 15th and March 10th, Meador Bros. had the abstract examined by attorneys, who gave a favorable opinion on the title as shown by the abstract. It appears from the record Meador Bros. desired the deed to be signed by Mrs. Taylor, which they were unable to obtain, but accepted an affidavit from Taylor, dated February 28, 1902, to the effect that there was no other legal claimant to the land than himself. This affidavit was made before Rudolph, who at that time was county clerk, and on the next day, March 1st, he wrote a deed from J. W. Taylor to John Sparks, conveying the land contracted to Meador Bros. February 15th. He testified that he knew on that day Meador Bros. were still investigating the title to the land. He filed the deed from Taylor to Sparks for record, and never notified Meador Bros. of such deed. On March 7th Rudolph wrote Meadors to hasten the consummation of the transaction, asserting Taylor had a perfect title. After Meador Bros. became satisfied with the title and sent the money on the 10th of March to the Lowden National Bank, on the 22d of March Rudolph, having learned of the remittance, wrote Meadors, demanding his commission, saying:

"Rather than have you trust me with the amount advanced ahead of your getting the deed for it is ready to deliver to you and you can send me my part, then the bank can send your deed to you. I have wired them to do this."

On the 25th of March Meador Bros. wrote Rudolph that this was all right, and they would send him the money just as soon as they received notice from the bank that the deed was executed. On the 31st day of March Rudolph wrote the Lowden bank with reference to the understanding between him and the Meadors, telling the bank to wire Meador Bros. when the deed should be executed, and to hold it until the bank was notified that his commission was paid. On April 5, 1902, Rudolph wrote, excusing Taylor's delay in making the deed, and again wrote to the same effect on the 17th of April. On the 18th of April, 1902, John Sparks, in Reno, Nev., executed a deed from himself to Meador Bros., conveying the seven sections of land, and on April 26, 1902, the Lowden National Bank wired Meador Bros.:

"Deed from Sparks here. When Rudolph says will surrender to you."

Again, on April 28th, the bank wired:

"Taylor deeded to Sparks; Sparks deeds to you. Both deeds sent you when Rudolph so instructs."

Meador Bros. had not heard that Sparks was connected with the land previous to receiving these wires, and had no actual notice of the deed from Taylor to Sparks on record. Immediately the defendant wrote Rudolph for an explanation, and then took the train for Stratford, arriving there shortly after the 3d of May. Upon his arrival he found that Taylor's wife had sued J. W. Tay-

lor and John Sparks for the land, which had been instituted on May 3, 1902. The Meador Bros. were finally made parties to the suit, and the litigation was long drawn out; it being finally determined that the land was the separate property of Mrs. Taylor and purchased with her separate funds; that Meador Bros. were bona fide purchasers to the extent of the purchase money paid by them prior to the notice of Mrs. Taylor's title. Their interest in the land was decreed to be in proportion to the amount sent to the Lowden National Bank, and that as to the $868.09 not paid and for which Rudolph here sues, in that proportion Mrs. Taylor should recover. The equities were finally adjusted in the courts by giving Meador Bros. about six-sevenths and Mrs. Taylor one-seventh of the land. The judgments and the report of the case, when upon appeal, were introduced in evidence in this case. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 485, 6 L. R. A. (N. S.) 381, and Meador Bros. v. Mrs. Hines, 165 S. W. 915. Upon reaching Stratford, appellant sought Rudolph for an explanation, and after ascertaining about the suit—and he testified that he had never heard of Sparks until he received the telegrams—that Rudolph then showed him the docket of the entry of the suit, and they agreed to let the matter stand like it was until the suit was settled, and agreed to leave the money in bank; Rudolph agreeing to wire the Lowden bank to hold everything up until it was settled. It is inferable from the record that the wire, if sent, was sent too late to prevent the bank paying the draft. Rudolph testifies:

That on that occasion he demanded the sum sued for, and Meador demanded the $100 which had been paid him as earnest money. "He [Meador] said he did not know yet whether they would agree to take the deeds and carry the deal through, or whether they would call it off, but they would deposit this $868.09 or the money called for in the contract. I do not think at that time we discussed the amount or figures, but they would deposit it in the First National Bank of St. Joe, Tex., to await the termination of this suit against the title. He said they would do that if they took the deed and carried the deal through. * * * He said he would deposit that money in the First National Bank of St. Joe, and it would be on deposit there pending the suit of Mrs. Taylor against Taylor and Sparks, * * * and if they won the suit the money was to go to me, and if they lost the suit the money was to go back to them. A little later I got a deposit slip through the mail from the First National Bank at St. Joe."

He here testified:

That he did not have the deposit slip, but he supposed it was with the First National Bank of Amarillo. "I borrowed some money from them (First National Bank of Amarillo), and left the deposit slip with them, with a check on the First National Bank of St. Joe, to hold as security until the settling of this suit, just an additional security to what I gave them other-

wise. * * * The slip showed a deposit to my credit in the First National Bank of St. Joe, on same date, of $968.09, upon conditions not subject to check."

After the deposit was made Meador Bros. claimed the deposit was too much by $100, and wrote Rudolph to send an order to the bank to return to them the $100, which he did, and which the bank returned to the Meadors on the order. When he learned the suit had been disposed of, he wrote to the bank that the case was settled. Thereupon he received a reply that the deposit had been withdrawn by Meador Bros., in June, 1916; that the bank had turned the money over to them on the advice of W. O. Davis, but that the bank had required Meador Bros. to execute an indemnity bond to protect against any claim that might be asserted by Rudolph. Rudolph testified that he did not consent to the withdrawal of the deposit. The appellee Rudolph also introduced the deposition of Bowers, cashier of the First National Bank of St. Joe, who testified that the money was deposited in the bank to the credit of Rudolph, and held in his name as a special account until June, 1916, when it was withdrawn by Meador Bros., upon the making of an affidavit that the suit had been settled, and that they did not acquire title to the entire seven sections of land, and also after Meador Bros. had executed a bond of indemnity required by the bank. And he further testified:

"My best recollection in a general way, aided by our records, is as follows: That C. F. Rudolph claimed a certain amount was due him by Meador Bros. as commission on the sale or purchase of some lands for or by them out West there, and there was a question as to whether or not said Meadors had acquired full title to the same, and that there was an agreement between them that said Meador Bros. was to and did deposit the sum of $868.09 in said bank to await the determination of the fact of title, and, in case it was decided that said Meador Bros. had acquired entire title to said land, said deposit was to be paid to said Rudolph; otherwise to be returned to Meador Bros."

W. O. Davis and S. D. Meador both testified there was a written agreement with Rudolph as to making the deposit, and left with the bank, but, as claimed by them, it had been lost. The court excluded any testimony as to its contents on the ground that it was not sufficiently accounted for. T. S. Meador died September 3, 1914.

Issue No. 1, submitted by the court, is as follows:

"Was it the agreement by and between the plaintiff, C. F. Rudolph, and the defendant S. D. Meador that the money deposited in the First National Bank of St. Joe, Tex., was deposited upon the condition that, if the suit by Mrs. Taylor or Hines against Meador Bros. resulted in favor of Meador Bros., said deposit was to be paid to said C. F. Rudolph?"

The jury answered, "Yes." Issue No. 2 required the jury to answer if the agreement for the deposit was made on the condition that the money was to be returned in case they were not finally successful in maintaining a right to the entire seven sections of land in the suit. The jury answered this issue, "No." The other issues relate to the question of Meador Bros. drawing out the money from the bank fraudulently, etc., which the jury determined in favor of the appellee that they did, and that it was the purpose and intent of Rudolph to forbear bringing suit for the money, and that the intent of Meador Bros. was to forego the plea of statute of limitation.

The first and second assignments are based on the action of the court in overruling and in not sustaining the first and second special exceptions to the petition, which are to the effect that it appears from the petition that the defendants were residents of Montague county, and that none of the exceptions to exclusive venue were asserted; also that the agreement of February 15, 1902, was abrogated by the subsequent agreement, which last agreement was not to be performed in Sherman county.

The sixth assignment asserts that if plaintiff had any cause against the defendant it is for withdrawal of the deposit from the St. Joe bank, for which suit cannot be maintained in Sherman county. The court did not submit an issue as to the plea of privilege further than as above noted. Upon the return of the verdict the appellant moved that, upon the undisputed evidence and the findings of the jury, the judgment be rendered, transferring the case to the district court of Montague county for trial. This the court refused to do, but rendered judgment against the appellant for the amount sued for, with interest, $1,030.15.

The appellant presents two propositions: The first is:

"The deposit of that portion of the purchase money going to C. F. Rudolph in the First National Bank of St. Joe, Tex., satisfied the contract, and substituted the liability of the bank for that of T. S. and S. D. Meador, and thereafter Rudolph had no lien upon the land, or any cause of action upon which he could maintain suit in Sherman county, even though it should be held that Meador Bros. collected the deposit before they could rightfully do so."

The second proposition is:

"The evidence failing to show either fraud or lack of good faith on the part of Meador Bros. in reference to the deposit in the First National Bank of St. Joe, appellant's plea of privilege should have been sustained, and this cause transferred to the district court of Montague county for trial."

If appellee, Rudolph, alleged or proved any liability or cause of action against Meador Bros., it was upon the deposit in the St. Joe bank, and the wrongful appropriation of that fund by them. Under the contract of February 15, 1902, Meador Bros. were liable for no more than they agreed to pay for the land, either to Taylor or Rudolph. They paid for all the land they got under the contract. The only ground of their recovery was that they had paid for six-sevenths of the land before they had notice of Mrs. Taylor's equitable title. They were bona fide purchasers to that extent and no further. Their recovery did not rest on a legal and equitable title obtained from Taylor under the contract, for he had none, and he and his agent, Rudolph, breached the contract in their failure to convey a good and perfect title to Meador Bros., and as a consequence they lost one-seventh of the land in the suit of Taylor against Sparks. This fraction so lost, and which is set out in the petition, is exactly in proportion to the purchase price as the amount not paid for bears to the entire purchase price for which Rudolph sues. There was therefore apparent upon the face of the pleading, and conclusively shown by the evidence, a total failure of consideration for the covenant in the contract to pay Rudolph $868.09. There was no breach on Meadors' part in failing to send the money to Rudolph on the 10th day of March, at the time they sent the money to the Lowden bank. At that time Taylor had placed it beyond his power to convey the land to Meador Bros. He and Rudolph, acting together, put the apparent legal title in Sparks on March 1st and had the deed recorded. Meador Bros.' prospect for title under the contract thereafter depended upon the contingency whether Sparks could or would convey the land to them. Neither Taylor nor Rudolph were entitled at that time to any sum. Afterwards Rudolph agreed, by letter, to wait for his part of the money until Taylor executed the deed, and until the bank should notify Meador Bros. On April 26th the bank notified Meador Bros. that Sparks had deeded to them. This new situation, of which Meador knew nothing up to that time, demanded an explanation, and before it could be had suit was filed by Mrs. Taylor, and, as they then had ample notice of her equity, any part of the purchase money paid after such notice would have been at their peril. All these new complications arose after the contract of February 15th, and were through no fault of Meadors.

[1-3] The change in the conditions and circumstances arising after the date of the contract demanded a new understanding or contract. So Rudolph testifies when Meador Bros. learned of this suit and called on him, Meador said he would put up the sum in the St. Joe bank, and that it would so remain on deposit, pending the suit, and if they won this suit the money was to go to Rudolph, and if they lost the money was to go to them.

The money was deposited in the bank in the name of Rudolph, and a deposit slip was furnished him, which he accepted and used as collateral security with the First National Bank at Amarillo. Rudolph and Meador Bros. recognized that this money as deposited was subject to the order of Rudolph when Meador Bros. requested an order to pay back of the deposit $100, which had been made in excess of the claim, and the bank recognized that right when it paid back the money on the order. The bank further recognized Rudolph's right to hold the deposit as his debtor when they required an indemnity bond before they would pay the money to the Meadors. The money remained in the bank for something like 14 years to the credit of Rudolph, and the jury found as a fact that it was deposited under the agreement of Rudolph and Meadors; that such money so deposited was upon the condition that, if the suit resulted in favor of Meador Bros., the money should be paid to Rudolph. This, we think, was a clear substitution of the latter agreement for the former, to pay Rudolph the sum provided for in the contract of February 15, 1902, and was intended by all parties to abrogate the former undertaking. By the last agreement the only question to be determined was whether Meador Bros. won their suit and recovered the land. In other words, Rudolph and the Meadors recognized that the agent could not recover his compensation due him by Taylor out of the purchase money to be paid, unless it was determined by the court that the sale by Taylor under the contract vested the title in Meador Bros. That was the issue to be tried, and when the court settled the issue in the suit brought by Mrs. Taylor, that determined to whom the money in the bank was ultimately to be paid. The bank took the money as a specific deposit and for a specific purpose, but in doing so it did not keep such funds separate from the general funds, but was authorized to treat it as a general deposit would be treated, which would create the relation of debtor and creditor between the bank and the party in whose name the deposit is made, on the well-recognized principle of law that the deposit is a debt owing by the bank to the party in whose name the deposit is made. Morse on Banks and Banking, §§ 186, 205; Baker v. Kennedy, 53 Tex. 200; Bank v. Abernathy, 153 S. W. 349. On the deposit of the money to Rudolph's credit under the agreement and upon the acceptance by Rudolph, the relation of creditor and debtor was created between the bank and himself, and relieved Meador Bros. from paying the money again to Rudolph at Stratford under the original contract. Hubbard & Gray v. Petty, 37 Tex. Civ. App. 453, 85 S. W. 509. By the agreement of all parties a new debt was substituted for the old one.

The old debt or contract was extinguished. Wasson v. Davis, 34 Tex. on page 168.

"Novation is effected by the substitution of a new obligation, between the same parties, with the intention to extinguish the old one; or by the substitution of a new debtor with the intention to release the old one; or by the substitution of a new creditor with the intent to transfer the rights of the old one to him." Gimbell & Son v. King, 43 Tex. Civ. App. 188, 95 S. W. 7; Pierce, etc., v. Woods, 180 S. W. 1183; Elliott on Contracts, vol. 3, § 1867; 29 Cyc. 1130 et seq., 1137; R. C. L. vol. 20, p. 360, par. 1, Novation; American & Eng. Enc. of Law, vol. 21 (2d Ed.) pp. 662, 663 (2, 4), also pages 669, 670 (e, f, g).

[4, 5] We believe this case presents a novation if there was any original valid obligation to pay. It is not essential that assent to the acceptance of the terms of novation be shown by express words, but the same may be implied from the facts and circumstances and the conduct of the parties. 20 Cyc. 1132. Rudolph accepted the proposition to deposit the money in the bank to his credit, and the deposit was so made. Afterwards he accepted it by various dealings therewith. The pleadings we think show that fact, and certainly the uncontroverted evidence established that he agreed to and accepted the deposit, and the jury so found. The bank recognized its obligation by issuing evidence of its indebtedness. Meador Bros. placed the money as agreed, and left it in the bank for 14 years. There was ample consideration for the substitution of this new contract for the old, and we think its effect was to extinguish the former obligation. If the appellee had any cause of action it was against the bank to pay upon demand the amount of the deposit. Bank v. Greenville Bank, 84 Tex. 40, 19 S. W. 334. Or, if the bank paid the money so deposited wrongfully to Meador Bros., appellee had a cause of action as upon conversion against both the bank and appellant, either jointly or severally, but the venue would be in Montague county. Bank v. Jones, 18 Tex. 811; Bank v. Shannon, 159 S. W. 401.

We believe, under the uncertain and indefinite allegations of the petition, the trial court should have so interpreted the allegations as setting up a novation and should have sustained the exceptions heretofore set out. Snipes v. Bomar, etc., 106 Tex. 183, 161 S. W. 1. Assuredly, we think under the undisputed facts and the findings of the jury the court should have granted appellant's motion for judgment changing the venue. It will therefore be the order of this court that the judgment of the court below be reversed and remanded, with instructions to the trial court to enter a judgment or order changing the venue from Sherman county to Montague county, under the provisions of the statute.

### On Motion for Rehearing.

[6] The deposit in this case was not a special deposit in its restrictive sense and as defined by the authorities; that is, the thing deposited should be safely kept, and the identical thing returned. It falls nearer under the meaning of a special deposit, as defined by Morse on Banking (5th Ed.) § 207, in which case the bank would be liable for the return of the money to the depositor, or the party in whose name it was deposited, if paid in violation of the contract between the parties with reference to the deposit. Section 208. Hunter v. Wallace, 57 Tex. Civ. App. 1, 121 S. W. 180. Again, that author states:

"It is the custom of banks, upon receiving money for a specific purpose, as to pay a note, to mingle the funds with their own, and to pay the note at a proper time, just as they would a check. The funds are not kept separate. There is no practical difference between such deposit and a general deposit, and it seems clear that the bank should be held to the same liability as for a general deposit." Section 210, citing, in the note, McLain v. Wallace, 103 Ind. 562, 5 N. E. 911.

This court has practically held to the same view in Young v. Bundy, 158 S. W. 566, and Bank v. Shannon, 159 S. W. 398, in which last case a writ of error was denied. It is frequently said to be a special deposit where money is deposited for a specific purpose. However, we think it is generally held in such case a bank cannot permit money so deposited to be used or checked out for any other purpose than the specific purpose for which it was deposited and accepted, or when the bank has notice of such purpose. But as we read the authorities, it would be liable on the contract to pay when the conditions are fulfilled. It could not pay or permit the deposit to be used for any other purpose. Unless there is an agreement to keep the deposit separate from the bank's funds, it is customary to mingle it with those of the bank. In the absence of an agreement or direction, it will be kept as a general deposit, with the same liability on the bank to the depositor. There may arise a different question where the rights of third parties are concerned, or where the bank becomes insolvent, or the like. The authorities on this question, as we read them, are not in accord; but, for the purpose of this case, we think the deposit may be treated as creating the relation of debtor and creditor between the bank and Rudolph—at least to some extent. Meadors, by the agreement and by the acts of all the parties, had no control over the deposit after it was made, under the agreement. There appears to have been no agreement to keep it separate from other money, but it was a deposit made as are general deposits for specific purposes. Whether the fund so deposited shall be designated as a special or a deposit for a specific purpose, or whether the bank shall be treated as a trustee of such fund to hold the fund to await the determination of the suit over the land, or treated as a debtor upon the contract, yet it was nevertheless a new contract for paying the amount claimed by Rudolph, the bank by its contract agreeing to hold the fund in the name of Rudolph, and if the suit went in favor of Meador for the land to pay it to Rudolph. The bank recognized this liability so to do by issuing a certificate of deposit. Rudolph accepted this certificate as evidence of the amount due by Meador, and used it as an asset in obtaining credit with another bank, and the jury found he made such an agreement, and Meadors under that agreement placed the money in the bank. The bank is clearly liable to Rudolph for the money if it paid the money in violation of its express contract with him. This transaction evidences an entire merger of Meadors' original obligation into the contract which was subsequently made, and it is the contract upon which Rudolph must recover, if at all, and in fact on which the jury and the court below evidently decreed a recovery. His petition shows he had no vendor's lien because Taylor had none. Meadors paid for all the land they ever got. There was due Taylor no unpaid purchase money, and hence none was due Rudolph. The uncontroverted evidence and the findings by the jury establish the substitution of a new obligation between Rudolph and Meador to extinguish the old one, and also the substitution of a new creditor or obligor on the new contract. We think it cannot well be denied that the bank did assume an obligation to pay the money to whom it was due, as determined by the result of the litigation, and a violation of the obligation would render the bank liable to Rudolph. This being the contract upon which Rudolph was authorized to sue, we held that the venue of the suit was in Montague county, the acknowledged and admitted residence of Meador.

The motion will be overruled.