**TYLER COUNTY STATE BANK et al. v. RHODES. (No. 1010.)**

(Court of Civil Appeals of Texas. Beaumont. Dec. 10, 1923.)

**1. Banks and banking ⬦119—"General deposit" defined.**

A general deposit is one generally to the credit of a depositor, to be drawn upon by him in the usual course of the banking business, and creates the relation of debtor and creditor between the bank and himself, and the money deposited is mingled with other funds of the bank and becomes the property of the latter; it not being contemplated that the identical money deposited is to be returned.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Deposit.]

**2. Banks and banking ⬦153—"Special deposit" defined.**

A special deposit is the placing of something in the custody of the bank of which special thing restitution must be made, and title to the thing deposited does not pass to the bank as it does in the case of a general deposit, but remains in the depositor, to be kept by the bank and specifically returned, and forms no part of the bank's disposable capital.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Deposit.]

**3. Banks and banking ⬦153—Money or effects deposited for safe-keeping to be returned upon demand is special deposit.**

Money or effects deposited with a bank for safe-keeping to be returned upon demand is a special deposit, and creates the relation of bailor and bailee.

**4. Banks and banking ⬦153—Same deposit cannot be both a general and special one.**

The same deposit cannot be both a general and a special deposit.

**5. Banks and banking ⬦15—"Deposit" of money coming within statutory guaranty fund defined.**

To create a deposit within Vernon's Sayles' Ann. Civ. St. 1914, art. 486, relative to depositor's guaranty fund, money or the equivalent thereof must be placed in or at the command of the bank, and the title thereto pass from the depositor to the bank, creating the relation of creditor and debtor between depositor and bank.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

**6. Banks and banking ⬦153—Deposit of Liberty bonds for safe-keeping created relation of bailor and bailee.**

Where plaintiff deposited Liberty bonds in defendant bank to be kept safely by the latter and returned to plaintiff, the title to the bonds did not vest in the bank, but remained in plaintiff, and the deposit did not constitute a credit on plaintiff's cash account, the relation created being that of bailor and bailee and not that of debtor and creditor.

**7. Banks and banking ⬦15, 153—Bonds deposited to be subsequently returned held special deposit and not protected by guaranty fund.**

Where plaintiff deposited with defendant bank Liberty bonds for safe-keeping, the bonds constituted a special deposit not to be paid or accounted for by the bank in money, but by the identical deposit, and hence they did not come within the class of deposits protected by the guaranty fund, under Vernon's Sayles' Ann. Civ. St. 1914, art. 486.

**8. Banks and banking ⬦49(4)—When assessment was levied, it became due and stockholder's deposit became subject to charge therefor.**

When a bank became insolvent, the commissioner of insurance and banking was, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 453–459, and 552, authorized to levy an assessment upon the bank's stockholders, and, when he did so and the assessment against plaintiff was not paid, the commissioner was authorized to offset the assessment against plaintiff's deposit.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Suit by J. W. Rhodes against the Tyler County State Bank and another. Judgment for plaintiff, and defendants appeal. Judgment reversed and rendered for defendant Commissioner of Insurance and Banking and in favor of plaintiff against named defendant.

W. A. Keeling, Atty. Gen., and John W. Goodwin and Wallace Hawkins, Asst. Attys. Gen., for appellants.

Robt. A. Shivers, of Port Arthur, for appellee.

O'QUINN, J. Suit by appellee against the Tyler County State Bank and J. L. Chapman, commissioner of insurance and banking, to establish his claim of $600, the value of Liberty bonds held by the Tyler County State Bank as a noninterest-bearing and unsecured deposit, and payable out of the depositor's guaranty fund.

Appellee, as plaintiff, alleged: (1) That he deposited Liberty bonds of the value of $600 with Tyler County State Bank for safe-keeping, which the said bank agreed to keep safely and to return to him, that he had demanded the return of said bonds, but that said bank had not only failed to return to him his said bonds, but had converted the bonds to its own use and benefit, to his damage $600, and alleged that, as said bonds were United States government bonds, they were equivalent to, and in fact were, a deposit of that sum in cash, and therefore were protected by the guaranty fund law; (2) that he was a stockholder in said bank in the sum of $300; (3) that he had on deposit ——— hundred dollars in cash at the time said bank became insolvent and was taken in charge by

the commissioner of insurance and banking; that the commissioner of insurance and banking, upon taking charge of said bank, assessed the sum of $300 against him, the par value of his stock, and charged said assessment against his cash deposit account; that the conversion of his bonds by the bank was a payment by him on the bank's indebtedness, and full discharge of his indebtedness on his stock assessment, and prayed that he have judgment for the sum of $300, the amount taken from his cash deposit account to pay for his bonds assessment, and also that he have judgment for the sum of $300 as the amount due him on his Liberty bonds, and that same be classified as a claim subject to be paid out of the guaranty fund.

The defendant appellant J. L. Chapman answered: (1) By plea to the jurisdiction of the court; (2) that the suit was a suit against the state of Texas, and no consent of the state to be sued is alleged; (3) by general demurrer; (4) by special demurrer that the claim sued upon, as shown by the plaintiff's petition, was not a deposit in the Tyler County State Bank, but a demand for the conversion of bonds deposited for safe-keeping; and (5) by general denial.

The defendant Tyler County State Bank adopted the answer of the defendant Chapman.

The cause was tried before the court without a jury, and judgment rendered in plaintiff's favor, decreeing that the $300 which had been taken from plaintiff's cash deposit account in payment of the sum assessed against him as a stockholder on his bank stock be paid to plaintiff out of the assets of the bank then in the hands of the commissioner of insurance and banking, and that plaintiff have judgment for $300 as the amount due him on his bonds and that said amount be established as an unsecured noninterest-bearing deposit, and payable out of the depositor's guaranty fund.

The judgment was to be certified to the commissioner of insurance and banking for his observance.

This judgment established: (1) That the commissioner of insurance and banking had no right to charge the assessment against plaintiff on his bank stock, $300, against his cash deposit account, but that same should have been offset against plaintiff's claim for the value of his bonds converted by the bank; and (2) that the deposit by the plaintiff of $600 in Liberty bonds with the bank for safe-keeping was a deposit of that amount in cash, noninterest-bearing and unsecured and protected by the guaranty fund.

The case is before us upon the following agreed statement of facts:

## "Agreed Statement of Facts.

"For the purpose of this suit we, the attorneys representing the plaintiff and defendants, agree that the following is a true and correct statement of the facts in said cause:

"That the Tyler County State Bank was closed by order of the state commissioner of insurance and banking on the 28th day of March, A. D. 1921. That said bank had on deposit Liberty bonds belonging to the plaintiff in the sum of $400, and belonging to Miss Florida Booth Liberty bonds in the sum of $200, which said claim was transferred by Miss Booth to J. W. Rhodes, the plaintiff here; that said Liberty bonds were taken without the consent of plaintiff or Miss Booth and appropriated to the use and benefit of Tyler County State Bank, and that neither said bank nor the commissioner of insurance and banking have ever at any time returned said bonds to the plaintiff or paid for same, or any part thereof; that Tyler County State Bank paid no interest on said bonds; that said bonds were United States government bonds, and that said bonds were left with the Tyler County State Bank for safe-keeping. The commissioner of insurance and banking, subsequent to March 28, 1921, and after the Tyler County State Bank was closed, levied an assessment on the stockholders of said bank equal to the par value of the stock held by each and that plaintiff had on deposit in the Tyler County State Bank on the date of said assessment sums of money in excess of $600, and, after the assessment described above, the commissioner of insurance and banking charged plaintiff's account on June 4, 1921, with the sum of $300, being the amount of the assessment. It is agreed that the state bank examiner advised officials of the Tyler County State Bank that the Liberty bonds in question might be used as collateral for loans and money borrowed for the use of the bank; that the liquidating agent, without the consent of the plaintiff, took $300 of his, the plaintiff's, checking account, and appropriated the same to the use and benefit of the banking department, under the control of the commissioner of insurance and banking, with the consent of the commissioner of insurance and banking, and with his approval, and that said money so taken from the checking account of this plaintiff was taken by the liquidating agent as payment of the assessment of the plaintiff; that the Tyler County State Bank paid no interest on said bonds; that at the time of the closing of the Tyler County State Bank, as above set out, said Tyler County State Bank had converted plaintiff's bonds in the sum of $400, and the bonds of Miss Florida Booth in the sum of $200, to its use and benefit and without the consent of plaintiff or Miss Florida Booth; that the assessment of plaintiff was under the law $300."

The controlling question in the case is presented by appellants' seventh assignment of error, which complains that the court erred in overruling their special exception to the plaintiff's petition, which was to the effect that said petition was insufficient in law, because it showed upon its face that the claim sued upon was not a deposit in the Tyler County State Bank, but was a debt or demand for conversion of bonds deposited with said bank for safe-keeping. Under this assignment, appellants submit the proposition that—

"The liability of a state bank operating under the guaranty fund law, for breach of contract for the safe-keeping and return to the owner of Liberty bonds is not such a liability as is payable out of the depositor's guaranty fund."

Article 486, Vernon's Sayles' Civil Statutes 1914, provides:

"In the event the commissioner of insurance and banking shall take possession of any bank or trust company, subject to the depositors guaranty fund plan of this chapter, as herein provided, the depositors of said bank or trust company, as specified in article 448, shall be paid in full out of the cash in said bank or trust company that can be made immediately available from such bank; and the remainder shall be paid out of the depositors guaranty fund through the said board, in the event the cash available in said institution shall be insufficient; provided, that deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank, its officers or stockholders, to the depositor and deposits otherwise secured, shall not be insured under this chapter, but shall only receive the pro rata amount which may be realized from the assets, resources and collections of and from such banks and trust companies, its stockholders or directors."

In his petition, appellee alleged:

"This plaintiff would further show that said bonds were left with said bank for safe-keeping, which said bank agreed to keep and return to this plaintiff, which obligation and agreement the said bank failed and refused to do, and demand was made upon said bank to return said bonds, which it failed and refused and still fails and refuses to do, to plaintiff's damage in the sum of $600, but on the other hand had converted said bonds to its use and benefit to plaintiff's damage as above stated."

The prayer for relief was that he have judgment for the $300, which he alleged was unlawfully collected from him by the liquidating agent in charge of said bank, and that he have judgment classifying his claim for Liberty bonds in the sum of $300 under the guaranty fund.

[1-4] Bank deposits are of two kinds, general and special. A general deposit is a deposit generally to the credit of depositor to be drawn upon by him in the usual course of the banking business, and creates the relation of debtor and creditor between the bank and depositor. The money or funds deposited is mingled with the other funds of the bank, and becomes the property of the bank. It is not contemplated that the identical money shall be returned to the depositor, but the relation of debtor and creditor arises between the parties. A special deposit is the placing of something in the custody of the bank, of which special thing restitution must be made. Title to the thing deposited does not pass to the bank, as it does in the case of a general deposit, but remains in the depositor. It does not enter into the general funds of the bank. It forms no part of the bank's disposable capital. It is to be kept by itself and specifically returned. Money or effects deposited with a bank for safe-keeping to be returned upon demand is a special deposit, and does not create between the bank and the depositor the relation of debtor and creditor. Such a deposit creates the relation of bailor and bailee. The same deposit cannot be both a general and a special deposit. The chief characterizing element of a special deposit is that the thing deposited shall be kept safely and returned to the depositor.

[5] To create a deposit within the meaning of the statute (article 486, supra), money, or the equivalent of money, must, in intention and effect, be placed in or at the command of the bank, the title to which passes from the depositor to the bank, and for which the depositor is entitled to credit upon the bank's books as a cash deposit, and creates the relation of creditor and debtor between the depositor and the bank.

[6, 7] Appellee's petition and the agreed statement of facts show that the deposit was not one of money, but was a deposit of Liberty bonds, to be kept safely by the bank and returned to appellee. The title to the bonds did not vest in the bank, but remained in appellee. The deposit did not constitute a credit on appellee's cash account. He could not check against same. The deposit of the bonds did not create the relation of debtor and creditor between the depositor and the bank, but that of bailor and bailee. The bonds constituted a special deposit, not to be paid or accounted for by the bank in money, but the identical deposit, the bonds, were to be returned, and therefore did not come within the class of deposits protected by the guaranty fund. Kidder v. Hall (Tex.) 251 S. W. 497, 499; Hall v. Bank (Tex. Civ. App.) 252 S. W. 828; Lankford v. Schroeder, 47 Okl. 279, 147 Pac. 1049, L. R. A. 1915F, 623; Bank v. Bank, 84 Tex. 40, 19 S. W. 334.

In Lankford v. Schroeder, 47 Okl. 279, 147 Pac. 1049, L. R. A. 1915F, 623, a case that arose under the banking law of the state of Oklahoma, which as to the guaranty fund is similar to the provisions of our statute, the plaintiff had purchased some notes from the bank, paying cash for them, and left the notes in the bank, under an agreement with the cashier that the bank would collect the notes and place the money received to the purchaser's credit account in the bank. The bank afterwards collected the notes, and without the purchaser's consent or knowledge appropriated the money to its own use without giving the purchaser credit therefor, and the bank afterwards, without paying the purchaser his money, failed and went into the control of the state banking commissioner, under the state banking law. The plaintiff contended that, at the time the bank received payment of the notes, it should have placed

the money so received to his credit in the bank, and that, having failed to do so, he was in the purview of the law, a depositor in said bank at the time it failed and went into the hands of the state bank commissioner; that his claim should be paid out of the assets of the bank in the hands of the state bank commissioner; and that, if they were not sufficient to pay his claim, then same should be paid out of the state guaranty fund. In passing upon this question, the Supreme Court said:

"That the plaintiff was not a depositor entitled to payment of his claim out of assets in the hands of the bank commissioner or out of the state guaranty fund, we think is clear. A depositor who is protected from loss by a failing bank is one who takes his money or its equivalent and places it, or causes it to be placed, in the bank to his credit subject to his right to check it out or withdraw it from the bank at will."

[8] By their ninth and tenth assignments of error, appellants assert that the commissioner of insurance and banking was authorized to charge the sum of $300, the amount appellee was assessed upon his bank stock, against the cash deposit account of appellee, and that the court erred in rendering judgment in favor of appellee for said sum.

The agreed statement of facts shows that the appellee had on deposit in the Tyler County State Bank, on March 28, 1921, the day the bank was closed and taken over by the commissioner of insurance and banking, a sum of money in excess of $600. After the bank was closed, the commissioner of insurance and banking levied an assessment against the stockholders of the bank equal to the par value of their stock. Appellee was a stockholder in the sum of $300; his assessment, therefore, was $300. The commissioner of insurance and banking, on June 4, 1921, charged appellee's deposit account with this $300. The judgment established that this $300 was unlawfully charged against and taken from appellee's checking account and decreed that same should be paid back to appellee out of assets of the bank.

The commissioner of insurance and banking was authorized to levy the assessment upon the stockholders of the bank (articles 453–459 and 552, Vernon's Sayles' Civil Statutes), and, as the assessment against appellee was not paid by him, then the commissioner of insurance and banking was authorized to charge the said assessment against appellee's deposit account. Upon the assessment being levied, appellee owed the bank the sum of $300, and same was due. At the same time, the bank owed appellee $600 on his cash deposit account. The amount appellee owed the bank could be offset by the bank (in this instance the commissioner of insurance and banking acting for the bank) against the debt

it owed appellee. Van Winkle Gin Co. v. Citizens' Bank, 89 Tex. 153, 33 S. W. 862; Bank v. DeMorse (Tex. Civ. App.) 26 S. W. 417; 5 Cyc. 550; Atty. Gen. Opinion No. 24; Cureton's Banking Laws of Texas, 549; 3 R. C. L. p. 529, § 157.

Appellants present a number of other assignments; but, in view of our holdings above, we do not deem it necessary to discuss them.

As we think appellee's petition failed to state a cause of action against the commissioner of insurance and banking, and that the court erred in overruling appellant's special exception thereto, and, in view of the agreed statement of facts, we do not think appellee, if the case were reversed and remanded, could so amend his petition as, under said agreed statement of facts, to state a cause of action against the commissioner of insurance and banking, we here reverse the judgment and render the judgment that should have been rendered below, that appellee take nothing by his suit against the commissioner of insurance and banking, and that said appellant recover of appellee all costs. But it appearing, without dispute, that the appellant, the Tyler County State Bank, as bailee of appellee's Liberty bonds in the sum of $600, converted said bonds to its own use, and has not paid appellee therefor, and appellee having prayed for relief generally, we here render judgment in favor of appellee against the appellant, the Tyler County State Bank, for said sum of $600, the value of the bonds so converted, with interest thereon at the rate of 6 per cent. per annum from March 28, 1921, the date the commissioner of insurance and banking took charge of said bank, together with all costs of suit.