## GULF PRODUCTION CO. v. CRUSE.*
### (No. 1020.)

(Court of Civil Appeals of Texas. Beaumont.
Jan. 31, 1924. Rehearing Denied
Feb. 13, 1924.)

**1. Mines and minerals ☞77—Lease held properly forfeited for nonpayment of taxes "due"; "payable."**

Under provision in oil lease: "Under penalty of forfeiture of the rights hereby granted, the company agrees to pay the taxes on the property above described * * * accruing * * * annually as the same become due and payable, unless and until it exercises the right to surrender given it in paragraph tenth hereof, provided, however, that should the company fail to pay said taxes, the said first party shall call the company's attention to its default by written notice, and no forfeiture shall be declared by the first party, unless and until the company fails to pay said taxes within thirty (30) days after its receipt of said written notice"— taxes became due and payable on October 1st, under Vernon's Sayles' Ann. Civ. St. 1914, art. 7615, though payment could not be enforced by tax collector until after January 31, following, and lessor could forfeit the contract before January 31, as the payment of taxes by the lessee was not an absolute obligation in view of its right to surrender the lease at any time, under Vernon's Sayles' Ann. Civ. St. 1914, art. 7615, a "debt being due" when it has by contract or operation of law become payable, and "payable" meaning capable of being paid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due; Payable.]

**2. Mines and minerals ☞77—Notice of lessor to lessee to pay taxes held sufficient.**

Letters by lessor under oil lease to lessee, stating the amount of taxes due on the land, "and this gives you notice of the amount thereof," held sufficient notice to the lessee to pay the taxes as required by the lease, which declared that forfeiture could not be had until 30 days after notice to comply with the contract in respect to payment of taxes.

**3. Mines and minerals ☞77—Oil lease ipso facto terminated by failure to pay taxes after notice.**

Under provisions in oil lease, held, that the lease ipso facto was forfeited by failure of lessee to pay taxes within 30 days after notice by the lessor to do so as provided by the lease.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by W. W. Cruse against the Gulf Production Company. Judgment for plaintiff, and the defendant appeals. Affirmed.

David Proctor, of Houston, for appellant.
E. M. Chester, of Beaumont, for appellee.

O'QUINN, J. Suit by appellee against appellant to cancel an oil lease on 125 acres of land in Hardin county, Tex. The suit was filed in Hardin county, but by agreement of the parties was transferred to and tried in the district court of Jefferson county.

The case was tried before the court without a jury, and judgment rendered canceling the lease, to which appellant excepted, and from which he has appealed.

The lease from appellee to appellant was executed on May 16, 1916, and covered approximately 125 acres of land, and was executed for a consideration of $2,962.50 in cash paid by appellant, and was for a period of 10 years and as long thereafter as oil was produced in paying quantities, and contained a specific covenant that appellant should be under no obligation to drill any well or wells on said land at any time within the 10 years, except necessary offset wells. The lease contained the following forfeiture clause:

"Sixth. Under penalty of forfeiture of the rights hereby granted, the company agrees to pay the taxes on the property above described for the present year and those accruing hereafter, annually as the same become due and payable, unless and until it exercises the right to surrender given it in paragraph tenth hereof, provided however, that should the company fail to pay said taxes, the said first party shall call the company's attention to its default by written notice, and no forfeiture shall be declared by the first party, unless and until the company fails to pay said taxes within thirty (30) days after its receipt of said written notice."

The construction of the above provision is the only question in the case.

Appellee alleged in his petition for cancellation that appellant failed to pay the taxes on said land for the year 1916, when they became due and payable, and that on the 26th day of October, 1916, he gave appellant written notice of its default, and that on December 27, 1916, appellant not having paid said taxes, he again gave appellant written notice of its said default, but that appellant failed and refused to pay the taxes within 30 days after receiving said written notices, or at any time thereafter, and that, after the expiration of 30 days after appellant received the second notice, he declared a forfeiture of the lease, and prayed for a cancellation of said lease, and that the cloud cast upon his title to said land be removed.

Appellant answered admitting the lease contract, but demurred generally to appellee's stated cause of action, and specially pleaded the above set out forfeiture clause in said lease, and alleged that it had until January 31, 1917, to pay the taxes for the year 1916, and that it could not have been in default in not paying said taxes until after the close of business on January 31, 1917, and that any notice of default given by appellee prior to the close of business on January 31, 1917, was premature and ineffectual; that on April 17, 1917, it had tendered to appellee the amount of the taxes by him paid

for the year 1916, which he refused to accept, and that appellant had for each and every year since 1916 paid the taxes on said land.

The letter of appellee to appellant of October 26, 1916, is as follows:

"Beaumont, Texas, October 26, 1916.

"Messrs. Gulf Production Company, City—Gentlemen: The taxes on lands leased you, situated on Batson Prairie, Hardin county, Texas, for the year 1916, is $21.50, and for which you are responsible, or agreed to pay, and this gives you notice of the amount thereof. I usually pay my taxes about the middle of January.

"Yours very truly,
                "[Signed]  W. W. Cruse."

The receipt of this letter is admitted by appellant. No reply was made to same, nor were the taxes paid by appellant.

On December 27, 1916, appellee wrote appellant as follows:

"December 27, 1916.

"Messrs. Gulf Production Co., Houston, Texas—Gentlemen: I have once heretofore given you notice of taxes due on land leased to you in the Willis Donahoe league of land, Hardin county, Texas, for the year 1916, the amount being $21.50, which you agreed to pay, and this again gives you notice to pay, as penalty will attach after January 31st, 1917.

"Yours very truly,
            .  "[Signed]  W. W. Cruse."

Appellant denies the receipt of this letter. The evidence relative thereto was that said letter was mailed at Beaumont, Tex., on December 26, 1916, postage prepaid, addressed to Gulf Production Company, Houston, Tex., and signed by appellee, W. W. Cruse, but that "so far as the Gulf Production Company knows, and so far as the files reflect, was never received by said company." The court found as a fact that said letter was received by appellant. No reply was made to this letter, nor were the taxes paid.

On March 23, 1917, appellant wrote appellee as follows:

"March 23, 1917.

"Mr. W. W. Cruse, Beaumont, Texas—Dear Sir: W. W. Cruse Lease No. 4550, Hardin County. I am writing in regard to the taxes on the 125¼ acres out of Willis Donahoe league in Hardin County, Texas, which the company holds under lease from you. The lease provides that the company shall pay the taxes on this property, and I am writing to know whether or not you desire the company to render this property for taxes, or whether it is your intention to render the same yourself and bill the Gulf Production Company for the tax.

"Yours truly,
"[Signed]  W. L. Thomas,
                "Land Commissioner."

Upon receipt of this letter, appellee wrote appellant as follows:

"Beaumont, Texas, March 31st, 1917.

"Messrs. Gulf Production Co., Houston, Texas—Gentlemen: Relying to yours of the 23rd

inst., beg to say that under the sixth paragraph of the lease made you, which recites that under penalty of forfeiture, you were to pay the taxes on said land, including the taxes of 1916, etc. I notified you twice of the amount of the taxes and having not heard from you and you having failed to pay the same to the Tax Collector of Hardin County, I paid them at the last moment in which they could be paid without penalty, and by your failure and refusal I consider that you have forfeited your rights under said clause to the lease on my lands, and I'm claiming the forfeiture.

"Yours very truly,
                "[Signed]  W. W. Cruse."

On April 17, 1917, appellant wrote the following letter to appellee, offering to refund the taxes paid by appellee for the year 1916, to wit:

"April 17, 1917.

"Mr. W. W. Cruse, Beaumont, Texas—Dear Sir: Herewith please find check of Gulf Production Company, Audit No. 1848, your favor, for $21.50, amount taxes for the year 1916, on that portion of the Willis Donahoe league, Hardin County, covered by your lease dated May 16, 1917. Please acknowledge receipt of same and oblige.

"Yours truly,
"[Signed]  W. L. Thomas,
                "Land Commissioner."

Appellee refused to accept the refund, on the ground that the lease had been forfeited because of appellant's failure to pay the taxes in accordance with the terms of the lease.

The facts are not in dispute. The only question is whether or not under clause 6 of the lease (above set forth) the facts were sufficient to support the forfeiture.

[1] In order to an affirmance of this judgment, three things are necessary: (1) That when the taxes became due and payable appellant failed to pay same; and (2) that appellee, after the taxes became due and payable and appellant had not paid same, called appellant's attention to its failure to pay said taxes, by written notice; and (3) that appellant did not, within 30 days after receiving said written notice, pay said taxes.

When is a debt or obligation "due" and "payable"? "Due," when used in relation as to when a debt or obligation is to be discharged, means that the debt or obligation has by contract or operation of law become payable. "Payable," when used in said sense, means capable of being paid—admitting or demanding payment. A debt is "due and payable" when the debtor has the right to pay it, regardless of whether the time has arrived when the creditor may have his action to enforce payment of same.

Article 7615, Vernon's Sayles' Civil Statutes, provides that the collector of taxes of each county shall begin the collection of taxes on the 1st day of October annually. Hence, taxes are due and payable on said date. It is without dispute that appellant did not pay

the taxes when they became due and payable, and that appellee, on October 16th, did "call the company's attention to its default by written notice," and that appellee did not then pay the taxes, and, after waiting two months, appellee again "called the company's attention to its default by written notice," and appellant did not then, or at all, pay the taxes or even reply to appellee's notices, but permitted the whole of the time from October 1, 1916, to the closing of business hours on January 31, 1917, to elapse without paying the taxes, when appellee, in order to protect himself from a 10 per cent. penalty, and to keep a tax lien off of his property, paid the taxes, which appellant had contracted to pay under penalty of a forfeiture of its lease if it failed to do so.

But appellant contends that it could not be in default in the payment of the taxes for 1916 until the date when, according to law, the payment of the taxes for that year could have been enforced by the tax collector—after January 31, 1917. It is believed that this contention is not sound. The taxes were by statute due and payable on October 1, 1916, and the fact that the law does not authorize a seizing of property for the satisfaction of taxes prior to January 31st following is a mere indulgence to the taxpayer, and does not mean that the taxes are not sooner due and payable. Wall v. Club Land & Cattle Co. (Tex. Civ. App.) 88 S. W. 534, affirmed 99 Tex. 595, 92 S. W. 984, 122 Am. St. Rep. 666.

Under the contention of appellant, he had until the close of business on January 31, 1917, in which to pay. Then, after said date, appellee could not, by paying the taxes, prevent the delinquency or penalty, for at the close of business on January 31, 1917, the taxes not being paid, the delinquency accrued and penalty attached. But appellant says that a reasonable construction of the forfeiture clause is that it was designed for the purpose of giving to appellee a weapon with which to force appellant to pay the taxes, and says that the obligation to pay the taxes was absolute and enforceable. We agree with appellant that the forfeiture clause in the contract was intended to effectuate the payment of the taxes by appellant, but we cannot agree that the obligation to do so, as provided in the contract, was absolute and enforceable. In paragraph 10 of the lease, it is specifically provided that appellant had the right "at any time to surrender" its rights under the lease, and in paragraph 6, the forfeiture clause under consideration, .special reference· is made to the right to surrender the lease in relation to the payment of the taxes. So, the payment of the taxes by appellant was not an absolute obligation, but rested entirely within the option of appellant. Appellee could not compel the payment of the taxes. The only way he could protect his property from delinquency and

the penalty was to pay the taxes when appellant failed to do so.

What did the parties mean by the phrase "as the same become due and payable"? Can we arrive at their intended meaning by their construction of same? It is a cardinal rule of construction that, if parties have themselves construed their contract, the interpretation given by them should prevail. Now, let us see whether the parties here have given any construction to their contract. The forfeiture clause provided that failure to pay the taxes when due and payable should be called to the attention of appellant by appellee in writing, and that, if appellant did not pay the taxes within 30 days after receiving said notice, then the lease was forfeited. The taxes became due and payable, and appellant did not pay them. It is apparent appellee understood· the contract to mean that the taxes were to become due and payable on October 1st, and that same should be paid by appellant at that date or within a reasonable time thereafter, for on October 26th, he wrote appellant, calling its attention to the taxes and to its obligation to pay same. This letter was admittedly received by appellant. It was sufficient to inform appellant that appellee understood and construed the contract to mean that the taxes were due and payable in October, 1916. Appellant paid no attention to this letter or to the interpretation of the contract by appellee; thus, we think, acquiescing in that interpretation. The letter was a notice to pay. After two months had elapsed from this notice, appellant had not yet paid the taxes, as it had contracted to do, and appellee, on December 27, 1916, again called appellant's attention in writing to the fact that said taxes were due and payable and had not been paid, and again requested appellant to pay same. While appellant, in· a way, contends that it did not receive said second notice, the court found as a fact that it did receive same, and we think the record amply supports the finding. To this notice appellant paid no attention, and did not at any time pay the taxes. We think that the giving of· the notices by appellee and the failure of appellant to pay the taxes or to protest to appellee that it had until January 31, 1917, in which to pay, and thus inform appellee that it intended to and would pay the taxes by that time, shows an interpretation of the contract by the parties, and that appellant must have fully comprehended appellee's understanding and intention in the matter. We think the terms of the contract are plain that the parties meant that when the taxes became "due and payable," which by law is on October 1st of the year for which the taxes are to be paid, that they should, with reasonable promptness, be paid, and not that payment of same might drag along for months and subject the lessor to the hazard of their be-

ing delinquent and a penalty attach, and the whole constitute a lien on his land.

Furthermore, appellant not only utterly ignored the letters of appellee calling its attention to its failure to pay the taxes according to its contract, but it seems to have entirely lost sight of the matter, for on March 23, 1917, almost two months after the taxes would have become delinquent but for the payment of same by appellee, appellant wrote appellee relative to the manner of rendering the land for taxes, and in said letter did not in any way refer to the unpaid taxes for 1916, or to the letters of appellee relative thereto. It was only after receiving appellee's letter of March 31, 1917, in reply to its letter of March 23d, stating the lease was forfeited for breach of the contract to pay the taxes that appellant came alive and now urgently insists that it has lost none of its rights by reason of its negligence and failure to comply with its obligation, for the reason, it says, that appellee either did not live up to his obligations in the premises in the way of giving notice to appellant, or has waived his right to a forfeiture. We do not think the contention is supported by the record. Appellee not only called appellant's attention to its failure to pay the taxes, as he had contracted to do, but repeated the notice. It was appellant that failed completely to respond to the contract, and appellee should not be deprived of his right, under the contract, to save appellant from its own default. The loss occurred through no fault of appellee, but same is wholly chargeable to appellant.

But appellant insists that the letters written by appellee to appellant were insufficient to constitute the notice stipulated in the contract, for the reasons: (1) That, as it contends, default in the payment of taxes not being possible before the close of business on January 31, 1917, the notice was premature; and (2) that neither of said letters contained a statement of appellee's intention to claim a forfeiture.

[2, 3] What we have said above disposes of the first contention, and we do not think it was necessary that appellee should have stated in his letters that, if the taxes were not paid when due and payable, he intended to claim a forfeiture. The contract did not so provide, but merely provided that he should in writing call the appellant's attention to its failure to pay the taxes, and that if appellant did not, within 30 days after receiving said notice, pay same, the lease ipso facto was forfeited. The very words of the forfeiture clause—"Under penalty of forfeiture" —shows that forfeiture was to follow the nonpayment of the taxes after 30 days' notice.

Appellant presents a number of other questions, which have all been considered, and,

as none of them present reversible error, they are all overruled.

The judgment should be affirmed; and it is so ordered.

Affirmed.