

# The Attorney General of Texas

January 25, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Joseph N. Murphy, Jr.
Executive Director
Employees Retirement System of Texas
Box 12337, Capitol Station
Austin, Texas 78711

Opinion No. H- 1121

Re: Disposition of surpluses generated under State employees group insurance programs.

Dear Mr. Murphy:

You request our opinion on the disposition of certain funds held by insurance carriers pursuant to expired contracts with State agencies. Prior to September 1, 1976, individual State agencies were authorized to enter into contracts securing group health and accident insurance for employees. Ins. Code art. 3.51; see Attorney General Opinions M-919 (1971); M-138 (1967). In 1975, the Legislature enacted the Texas Employees Uniform Group Insurance Benefits Act, Ins. Code art. 3.50-2, which provided for the coverage of all State employees under one uniform insurance plan, with exceptions not here relevant. See Attorney General Opinion H-859 (1976). The Trustees of the Employees Retirement System are responsible for administering the Act. Section 20 of the Act permitted State agencies to continue their separate insurance plans until the uniform plan became available:

> Effective Date.-- This Act shall become effective September 1, 1975, but no insurance coverages shall be provided hereunder until such time as the trustee shall have made a study of the coverages and benefits authorized by this Act and gathered the necessary statistical data and information to secure such group insurance and the Texas Legislature has appropriated the funds necessary to provide the insurance coverages and benefits provided for in this Act; provided, however, that subject only to the legislature's appropriating the necessary funds, group insurance coverages for state employees contemplated by this Act shall be provided beginning not later than September 1, 1976. Departments are specifically authorized to continue or initiate state employee insurance plans and policies with state financial participation until the date and time this Act is implemented; provided,

> however, that any experience rating refunds becoming
> payable to such department under any such plans or policies
> on or after the date and time this Act is implemented shall
> be paid to the Employees Life, Accident, and Health
> Insurance and Benefits Fund, and such payment shall be
> deemed payment to such department.

The uniform plan went into effect on September 1, 1976, and the authority of State agencies to continue individual plans ended as of that date. We are informed that the contracts providing these plans expressly provided for an expiration date of August 31, 1976. Some insurance carriers are still holding surplus funds, which the contract required them to pay to the contracting agency. You wish to know whether these surpluses should be paid to the contracting agency, or to the Employees Life, Accident, and Health Insurance and Benefits Fund established by section 16 of the Act and available for payment for insurance coverage and administration expenses. See Attorney General Opinion No. H-1040 (1977).

We note the contention of some agencies that they have vested contract rights to the refunds. However, no constitutional provision prevents the Legislature from allocating the refunds owed one agency to a different agency. The Legislature may remove public property from the custody of one agency and allot it to another and may withdraw from an agency the power it delegated to it. State v. Jackson, 376 S.W.2d 341 (Tex. 1964); Lander v. Victoria County, 131 S.W. 821 (Tex. Civ. App. — 1910, no writ); see Hunt County v. Rains County, 7 S.W.2d 648 (Tex. Civ. App. — Texarkana 1925, no writ). The legislatively created agency has no vested rights against the Legislature. Lander v. Victoria County, supra; see Deacon v. City of Euless, 405 S.W.2d 59 (Tex. 1966). There is no contention that employees of the agencies have acquired vested rights in the refunds which would prevent the Legislature from placing them in the Fund.

The answer to your question lies in the construction of section 20, which provides that "any experience rating refunds becoming payable to such department under any such plans" on or after the implementation date should be paid into the Fund. Some agencies have advanced arguments that any experience rating funds existing immediately before the new Act became effective were payable to the agencies at that time. "Experience rating refunds" are partial refunds of premiums, which prove excessive in light of claims actually paid under the policy. See Associated Indemnity Corp. v. Oil Well Drilling Co., 258 S.W.2d 523 (Tex. Civ. App. — Dallas 1953), aff'd, 264 S.W.2d 697 (Tex. 1954) (experience rating for workmen's compensation insurance); see generally R. Eilers, Regulation of Blue Cross and Blue Shield Plans 212 - 224 (1963). As a practical matter, the amount of such refunds generally cannot be determined until the contract period closes. In discussing experience rating as used in workmen's compensation insurance, a Texas court noted that the employer's experience during the policy year was not considered in setting rates until the policy year had expired. Associated Indemnity Corp. v. Oil Well Drilling Co., supra at 529.

Texas courts defined "payable" as meaning "capable of being paid," "legally enforceable," "admitting or demanding payment." First National Bank v.

Greenville, 19 S.W. 334, 335 (Tex. 1892). See also Munzesheimer v. Wickham, 12 S.W. 751, 752 (Tex. 1889); Gulf Production Co. v. Cruse, 258 S.W. 211 (Tex. Civ. App. —Beaumont 1924), rev'd on other grounds, 271 S.W. 886 (Tex. Comm'n App. 1925, jdgmt adopted). As defined, "payable" implies an obligation that can be performed now, not an unascertained, contingent liability. Cf. Southern Materials Co. v. Marks, 83 S.E.2d 353, 354 (Va. 1954) ("payable" in statute refers to time when obligation to pay is immediate). In our opinion, the experience rating refunds become payable when their amount is ascertained, so that the carrier can release them. As already noted, this amount generally cannot be ascertained until after the contract period ends. We are informed that carriers usually do not release such refunds until some time after the expiration date of the contract. In directing payment into the Fund of refunds "becoming payable . . . on or after the date and time this act is implemented" the Legislature apparently contemplated that determination of the amount would take some time. Ins. Code art. 3.50-2, § 20 (Emphasis added).

We believe, therefore, that the carriers should pay into the Employees Life, Accident, and Health Insurance and Benefits Fund those experience rating refunds that become ascertained as to amount and otherwise payable in a practical sense on or after September 1, 1976. In the language of section 20, "such payment shall be deemed payment" to the contracting agency.

In view of our answer to your first question, we need not answer your second question. You also state that the Employees Retirement System wishes to audit the carrier's records to verify the refunds payable, and ask whether the cost of this audit may be paid from the refunds.

The refunds becoming payable are to be paid to the Employees Life, Accident, and Health Insurance Fund, which is established by section 16 of the act. Section 16 provides in part:

> (a) There is hereby created with the treasury of the State of Texas an Employees Life, Accident, and Health Insurance and Benefits Fund which shall be administered by the trustee. The contributions of employees, annuitants, and the state provided for under this Act shall be paid into the fund. The fund is available:
> (1) without fiscal year limitation for all payments for any insurance coverages provided for under this Act; and
> (2) to pay expenses for administering this Act within the limitations that may be specified annually by the legislature.
> (b) Portions of the contributions made by employees, annuitants, and the state shall be regularly set aside in the fund as follows: a percentage, not to exceed one percent of all contributions, determined by the trustee to be reasonably adequate to pay the administrative expenses made available by Subsection (a) of this section.

In our opinion, the refunds payable to the Fund are subject to section 16(a), and may be used to pay for insurance coverages and administrative expenses. We believe that the expense of the projected audit is an expense of administering the Act. Cf. Ins. Code art. 3.50-2, § 17 (carriers must permit trustee to examine their records). Although section 16(b) provides that no more than one percent of contributions be set aside for administrative expenses, this limitation appears to apply only to contributions made under the Act and not to experience rating refunds paid into the Fund. See also Ins. Code art. 3.50-2, § 3(b). We find no additional limitation in the current Appropriations Act that would prevent payment from the refunds of expenses incurred in auditing the carrier's accounts. See General Appropriations Act, Acts 1977, 65th Leg., ch. 872, art. 3, at 2875.

### SUMMARY

Experience rating refunds attributable to group insurance plans maintained by individual state agencies prior to September 1, 1976, must be paid into the Employees Life, Accident, and Health Insurance and Benefits Fund. The Employees Retirement System may use the refunds to pay for the cost of auditing the insurance carriers holding them.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst